CITY OF HOUSTON ET AL. V. CITY OF MAGNOLIA PARK ET AL.

No. 4389.   Decided October 21, 1925.

(276 S. W., 685).

1.—Cities—Charter—Local Self Government.

The amendment of Article 11, Section 5, of the Constitution, adopted Nov. 5, 1912, substituted the rule of the inhabitants of cities of more than 5,000 population for that of the Legislature, and deprived it of power over charters of such cities.   Vincent v. State, 235 S. W., 1084.   (Pp. 107, 108.)

2.—Same—Amendment—Annexation of Territory.

The Act of August. 1921, Laws,· 37th Leg., 1st Called Session, p. 153, authorizing cities having a population of 100,000 and under 150,000, by amendment to their charters, to annex adjacent territory which "does not include any incorporated city or town having more than five thousand inhabitants according to the last United States Census," recognized the fact that it could not, under the Constitution, authorize the annexation of cities having such population and given the right of local self government by the Home Rule Amendment to the Constitution.   (P. 109.)

3.—Same—Test by United States Census.

The right to home rule being given by the Constitution to cities having more than 5,000 population, it was beyond the power of the Legislature to deprive them of this by granting to another city the power to .extend its boundaries and substitute its charter over them unless the city so absorbed had such a population as tested by the census taken by the United States once in ten years.   (Pp. 109, 110.)

4.—Same.

The power given the Legislature to limit the manner of adopting or amending a charter by a home rule city does not extend to destroying such right.   (P. 110.)

5.—Same—Case Stated.

The City of Houston, having between 100,000 and 150,000 population, by an amendment of its charter, sought to extend its boundaries so as to include therein the incorporated city of Magnolia Park, which then had more than ten thousand inhabitants, but had less than five thousand by the last United States Census.   *Held,* that the statute authorizing such extension,

testing the population of Magnolia Park by such census, was unconstitutional. Williams v. Castleman, 112 Texas, 193; Brooks v. Dulaney, 100 Texas, 86. (Pp. 111, 113.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

The Supreme Court, having referred the question to the Commission of Appeals, Section B, for its opinion thereon, here adopts and orders same certified as its answer.

*Sewall Myer* and *J. H. Painter*, for appellants.

The amendment to the Constitution, known as the Home Rule Amendment provides that cities of more than five thousand inhabitants may, by a certain process, *"adopt* or *amend* their charter, subject to such limitation as may be prescribed by the Legislature" and nowhere does it provide or prohibit the repeal of a charter by the Legislature or, through legislative permission, by another municipality. Oak Cliff v. State, 77 S. W., 24, 97 Texas, 383; Washington Heights Ind. Sch. Dist. v. City of Fort Worth, 251 S. W., 341.

Until a City adopts a charter or amends its charter, in accordance with the general law on such subject, the power of local self government and the right to protection under the Home Rule Amendment does not exist. Legois v. State, 190 S. W., 724.

Magnolia Park not operating under a special charter, not claiming to be nor .proving itself to be incorporated under the general law, and not having availed itself of the Home Rule Amendment nor claiming that it ever adopted or amended or attempted to adopt or amend its charter by an election held for that purpose under the Home Rule Amendment, the court cannot take judicial cognizance of its corporate existence, if in fact there be any such. Moller v. Galveston, 57 S. W., 1116.

*F. A. Collins, York & Neeld,* and *King & Battaile,* for appellee.

It is easy to decide from the reading of this amendment that it was the intention to classify cities of more than five thousand inhabitants into one class, and to confer the power upon such cities to adopt, amend, and repeal their own charters. The Legislature is given the right to place limitations upon this power. The Legislature may, therefore, make rules and regulations and limitations to be observed by these cities, in exercising the rights conferred upon them by this provision of the Constitution. But the Legislature cannot *destroy that right, nor withhold from these cities that right.*

It is our position that a city, regardless of the number of its inhabitants at the time of the adoption of this Constitutional Amendment, becomes entitled to the benefits of it, the authority therein conferred, and the privileges granted, *the moment that it reaches necessary population.* Furthermore, that it does not have to wait until a Federal census shows that it has more than five thousand inhabitants. This is expressly decided in Williams v. Castleman, 112 Texas, 193, 247 S. W. 263. The Constitution itself lays its hands upon such cities and says, here is the law that governs you. For instance, it is held in the case of Vincent v. State by the Supreme Court, 235 S. W., 1084, that under the Constitution as it is at present, with respect to cities of more than five thousand inhabitants, the Legislature itself is powerless to incorporate, or amend or repeal the charters of said cities. That by the Home Rule Amendment this power has been taken away from the Legislature and conferred upon the cities of this class. If this be true, neither can the Legislature directly or indirectly confer upon other cities containing more than five thousand inhabitants the power to deprive a like class of cities the right conferred under the Constitution.

MR. PRESIDING JUDGE POWELL pronounced the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the First District:

"In the above styled cause, pending in this court on appeal from an order of the District Court of Harris County granting appellees a temporary injunction, we deem it advisable, because of the public importance of the issues involved and the desirability of obtaining a final decision of the questions at an early date, to certify for your determination the questions hereinafter set out, which arise upon the following statement of the record.

"This suit is brought in the name of the City of Magnolia Park, a municipal corporation organized as such under the general laws of this state providing for the incorporation of cities and towns, and was brought by four of the five members of the board of aldermen of said city, who sue both in their official capacity and as individuals. The City of Houston and the Mayor and Commissioners of said city are the defendants in the suit. The purpose of the suit is to enjoin the defendants from extending the boundaries of said city so as to include the City of Magnolia Park under authority claimed by the defendants as the

result of an election held on April 13, 1925, under an ordinance of the Board of Commissioners of said city, to determine whether the charter of the city should be amended by extending the boundaries of the city so as to include the City of Magnolia Park and other adjacent territory. The specific relief sought by the suit was an injunction restraining the City of Houston from performing or committing the following acts:

" '(a)    From entering or causing to be entered upon the records of the City of Houston an order declaring the aforesaid amendment relating to the extension of the boundaries of the City of Houston aforesaid, which boundaries include the City of Magnolia Park as aforesaid, adopted;

" '(b)    From extending the boundaries of the City of Houston as provided in said amendment so as to include the City of Magnolia Park;

" '(c)    From defining the boundaries of the City of Houston so as to include within said boundaries the territory comprising plaintiff City of Magnolia Park;

" '(d)    From assuming control and authority and exercising jurisdiction and dominion as a municipal corporation over the territory comprising the City of Magnolia Park, as it will if said amendment is put into force and effect;

" '(e)    From ousting from office or otherwise interfering with or molesting the duly elected, qualified and acting officers of the City of Magnolia Park in the exercise of their official duties;

" '(f)    From taking possession of the public records of the said City of Magnolia Park;

" '(g)    From taking possession of and converting to its own use the property, both real, personal and mixed, owned and possessed by the City of Magnolia Park;

" '(h)    From taking any steps or doing any act the effect of which will be to abolish and destroy the City of Magnolia Park as a municipal corporation and depriving it of its corporate rights and privileges.'

"The grounds upon which the right to the injunction is claimed are, that the twenty days notice of the intention of the Board of Commissioners to pass the ordinance submitting the proposed amendment of the city charter to a vote of the electors of the city was not given as required by Art. 1096b of the Statutes of this state (Vernon's Sayles' Civ. Statutes), and therefore said ordinance and the election held thereunder are void; and that the act of the Legislature upon which the right of the City of Houston by a vote of the electors of that city to extend its

boundaries so as to include the municipality of Magnolia Park depends (Acts 37 Legislature Chapter 101, Arts 773a to 774d Vernon's Sayles' Civ. Statutes) is unconstitutional and void for the following reasons:

" 'First:   The act, though general in form, is a special and local law.

" 'Second:   It was passed at the first called session of said Legislature, and is not a subject specified in the Governor's proclamation convening said Legislature, as a subject to be legislated upon, nor is it contained as a subject of legislation in any subsequent message of the Governor to said called session of the Legislature.

" 'Third:   By Section 5 of Article 11 of the Constitution, known as the Home Rule Amendment, cities of more than five thousand population are given the constitutional right of adopting and amending their own charters, with such limitations as the Legislature may prescribe, and Magnolia Park, having a population of more than five thousand at the time of the attempted amendment of the charter of Houston, extending its boundaries so as to include said Magnolia Park, the act of the Legislature aforesaid is unconstitutional in its application, in that it would authorize the City of Houston to deny and deprive the City of Magnolia Park its constitutional right under Section 5, Article 11, of the Constitution, to adopt and amend its own charter.'

"The defendants answered by plea in abatement and numerous exceptions the nature of which are not material in the decision of the questions herein certified.   They also denied generally each and all of the allegations of plaintiffs' petition and specially denied the allegations of the petition that the act of the 37th Legislature, called session, before mentioned, was not upon a subject included in the proclamation of the Governor convening the Legislature nor in any subsequent message of the Governor to the Legislature at said special session, and aver that the subject of the act was duly presented to the Legislature by the Governor.

"The hearing in the court below was upon the sworn pleadings, and affidavits offered by the plaintiffs.

"The notice of the intention of the Board of Commissioners to pass the ordinance calling the election was first published on Feb. 20, 1924, and the ordinance was passed on March 11, 1925. Due notice of the election which was held on April 13, 1925, was given as required by the statute and the election resulted in a

large majority in favor of the proposed amendment to the city charter. No evidence was offered to show whether or not the act of the called session of the Legislature before referred to was included in the proclamation of the Governor or in any message submitted by him to said special session of the Legislature. It was shown that the City of Magnolia Park which had less than 5,000 inhabitants at the last United States census now has a population exceeding 10,000.

"The City of Magnolia Park has not adopted or amended its charter under the provisions of the Home Rule Amendment to our State Constitution and the Enabling Act passed thereunder by the Legislature.

"Upon this statement of the record, we respectfully certify for your decision the following questions:

"First: Is the provision for twenty days notice of the intention of the City Commissioners to pass an ordinance calling an election to determine whether the charter of the city shall be amended so as to extend the boundaries of the city, mandatory and jurisdictional, without compliance with which the order calling the election and the election held thereunder should be held void?

"Second: Is the jurisdiction of the Board of Commissioners to determine the fact of notice upon which its jurisdiction to pass an ordinance rests, final and conclusive, in a proceeding of this kind?

"Third: Is the Act of the 37th Legislature, Special Session, Chapter 101, a special or local act requiring notice of intention to apply therefor as provided in Section 27, Article 3 of the State Constitution?

"Fourth: Can the courts inquire into the questions of whether such notice was given or whether the subject of the act was included in the proclamation of the Governor convening the Legislature or in a message submitted to it?

"Fifth: Is the act mentioned void as to Magnolia Park because in contravention of Section 5, Article 11, of the Constitution of this State?

"Justice Graves disagrees with the majority of the court upon the question of the advisability of certifying any of the questions above propounded and is of opinion that the judgment of the trial court should be affirmed, and desires that his refusal to join in the action of the majority certifying these questions be embodied in this certificate, which is accordingly done."

In the view we take of the correct answer to the fifth question, we deem it unnecessary to answer the others.   Therefore, we refrain from doing so.   Assuming, for the purposes of this opinion only, that all other questions could be answered favorably to the City of Houston, we are still convinced that the annexation of Magnolia Park was unlawful because in contravention of Section 5, Article 11, of our State Constitution.

This case is not one involving the authority of a Home Rule city to extend its boundaries by taking in certain lands or the homes of individuals.   No question of that kind is involved here. We are confronted at this time with the authority of one Home Rule city to annex another city of the same dignity.   It seems to be an entirely new question in the appellate courts of this State.

In 1903, our Constitution provided that cities in Texas could be chartered as follows:   Those of ten thousand population or less "alone by general law;" those of more than ten thousand population "by special act of the Legislature."

In 1909, these constitutional provisions were amended in one respect only.   The population requirement was reduced from ten thousand to five thousand in each instance.   And, at the present time, cities of five thousand population or less may be chartered alone by general law.   But, on November 5, 1912, Section 5 of Article 11 of our Constitution was amended so as to read as follows:

"Cities having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this state; said cities may levy, assess and collect such taxes as may be authorized by law or by their charters; but no tax for any purpose shall ever be lawful for any one year, which shall exceed two and one-half per cent of the taxable property of such city, and no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent thereon; and provided further, that no city charter shall be altered, amended or repealed oftener than every two years. (Sec. 5, Art. 11, adopted election Nov. 5, 1912; proclamation Dec. 30, 1912.)"

Since the adoption of the section just quoted, the Legislature has not been authorized to charter a city of more than five thousand people. The people had substituted the rule of the local inhabitants of the cities for the rule by the Legislature of the State. One effort was made by the Legislature to enact a charter for a city of more than five thousand people after the Constitution was amended as aforesaid. The City of Plainview, being governed at the time under a charter adopted by the people under the general statute, found itself face to face with a special act of the Legislature granting it a new charter. But, this act of the Legislature was held void by the Court of Civil Appeals at Amarillo and its action was affirmed by this section of the Commission of Appeals. See Vincent v. The State, 235 S. W., 1084. Our courts have held that the people of this state have substituted the right of local self-government in cities of more than five thousand for the former method of control by the Legislature.

There has been very little legislation providing for the forcible annexation by one city of a contiguous city. In 1921, the 37th Legislature, in regular session, passed an act, the first section of which reads as follows:

"Any city having a population of fifty thousand or over, as shown by the last United States census, shall have the power and authority to amend its charter so as to extend its boundary limits by annexing additional territory adjacent and contiguous to such city where the territory so annexed does not include any incorporated city or town having more than two thousand inhabitants."

At the first called session of the same Legislature, the aforesaid act was amended (according to the title of the new act) by adding the following:

"Section 1. Any city having a population of one hundred thousand and under one hundred and fifty thousand, as shown by the last United States census, shall have the power and authority to amend its charter so as to extend its boundary limits by annexing additional territory adjacent and contiguous to such city where the territory so annexed does not include any incorporated city or town having more than five thousand inhabitants according to last United States census."

We are not called upon to say whether or not the statute authorizing a city of fifty thousand people to annex one of not more than two thousand, without the latter's consent, is consti-

tutional. Therefore, we do not desire to be understood as in any way passing upon that question.

In 1903, the Legislature, by special act, forcibly annexed the City of Oak Cliff, having less than ten thousand population, to the City of Dallas, having more than ten thousand population. This was done by the Legislature granting to the City of Dallas a new charter. That action was upheld by the Court of Civil Appeals at Dallas. 77 S. W., 24. The holding by the Court of Civil Appeals was affirmed by the Supreme Court, Associate Justice Williams having his dissent noted. 97 Texas, 383. The holding in that case authorized the Legislature to forcibly annex to a city of more than ten thousand people a city of less than ten thousand people. Of course, as already shown, the requirement for ten thousand population was later changed in our Constitution to five thousand.

Under the authority of the case last referred to, it would seem that the Legislature could still authorize cities of fifty thousand people to forcibly annex adjoining cities of not more than five thousand. We do not have any such question in this case.

It seems to us there is no room for the contention that the Legislature, either itself or through authorization to the cities themselves to do so, can authorize one city of more than five thousand people to forcibly annex an adjoining city of more than five thousand people. This is the very question we have before us and is the one we are to decide. In passing the statute last quoted, the Legislature showed quite clearly that it realized it could not, under Section 5 of Article 11 of our Constitution, authorize the forcible annexation of cities of more than five thousand inhabitants. For that reason, the act merely authorized the annexation of cities of not more than five thousand inhabitants. But, the question arises as to whether or not in fixing the time when the population was to be determined, the statute contravenes the Constitution. If the last clause of the statute under consideration had read "does not include any incorporated city or town having more than five thousand inhabitants *at the time of the proposed annexation*," an entirely different proposition would be before us. Apparently, that would not conflict with Section 5 of Article 11 of our Constitution. But, the act did not do so. On the contrary, it says, "according to last United States census." Under the terms of this act, Magnolia Park, or any other city of more than five thousand inhabitants, might have to wait for ten years before enjoying the benefits of local self-government as given under the Home Rule

Amendment. Not only so, but such a city would be compelled to stand by and permit itself to be forcibly annexed and its government entirely dissolved by an adjoining city at any time during the ten-year period. The Legislature did not have the power to deprive Magnolia Park, or any other such city, of its right to adopt and amend its own charter at any time after it had more than five thousand inhabitants. Under the act, its very existence could be wiped out without its people having any voice, much less entire control, of that question. The Legislature can *limit* the manner of adopting or amending a charter by a Home Rule city, but it cannot *destroy* that right.

The people of Texas have written into the fundamental law the provision that where a city has more than five thousand inhabitants it has a right to govern itself. If Section 5 of Article 11 had read: "Cities having more than five thousand inhabitants *according to the last United States census may,*" etc., the statute under which the City of Houston is attempting to act would apparently be constitutional. But, the underscored words were not inserted by the people of Texas in adopting this section. It was their desire that cities enjoy these rights at the earliest possible moment and not have to await the pleasure of the United States Government in taking a census, which has been done only every ten years. Not only is there no such wording in this section of the Constitution, but we find nothing anywhere in the Constitution which shows an intention that a city in acquiring a charter was to have its population determined by the last United States census. On the contrary, all the provisions of the Constitution and statutes in connection therewith show that cities were authorized to acquire their charter rights at any time upon attaining a certain population.

We are not called upon to say that the Legislature is without power to provide a reasonable method by which the population of a city could be determined at any given time. It probably would have such power. But, we do say it cannot *limit* a constitutional provision by saying that a right can be exercised only at every ten-year period, when the Constitution itself says cities shall have those rights at any time they reach a certain population. The Legislature is not authorized to limit the expressed will of the people in any such way. The act is void since it writes into the law a provision inconsistent with the Constitution itself.

It was the purpose of the people to bestow upon the cities coming under the Home Rule Amendment "full power of local self-

government." This was the declared purpose of the Enabling Act passed in January almost immediately after the new Home Rule section of the Constitution had been adopted. Furthermore, the Enabling Act provided that cities should go ahead under their old charters until they were amended or had adopted new ones. It was the intention of the citizenship of this State to give to cities the right to determine for themselves what kind of charter they should live under. Until their population exceeded five thousand they were subject to the general law in their incorporation. After that, they could avail themselves of the Home Rule Amendment and change their charters at their pleasure.

Magnolia Park was running along as a regularly incorporated city under the general statute. In 1920, it had less than five thousand people. Just when the city passed the five thousand mark is not apparent. But, it is conceded that when this attempted annexation occurred, it had a population of more than ten thousand people. Consequently, at that time, it had a right to say for itself whether it would keep its charter as it had been, adopt a new one under the Home Rule Amendment and remain independent of the City of Houston, or adopt a charter for themselves under which they would consent to have their city annexed to the City of Houston. The City of Houston Heights had been annexed to the City of Houston under a statute by the terms of which the annexation was dependent upon a favorable majority vote in each city voting separately on the same day. Against such a voluntary consolidation nothing can be said. We do feel that the courts should be slow to deprive one Home Rule city of its rights in favor of another Home Rule city. They are supposed to be of equal dignity. At any rate, they are equal under the provisions of our Constitution. The statutes cannot make them otherwise.

When the City of Houston attempted to annex it, the City of Magnolia Park had the right to defeat the plan by showing, as it would any other fact, that it had, *at that very time*, more than five thousand inhabitants. This statute has never heretofore been before the appellate courts. It was admitted by all parties in the argument that when passed in 1921, it could affect only two cities in Texas and they were Fort Worth and Houston. Just why the particular populations are designated is not apparent, nor is it clear why a city of one hundred fifty thousand people should have this right of annexation and one of more population should be denied it. It is seriously contended that the act was

intended to operate as a local or special law and therefore void. But, we are not passing upon that question.

We have found one authority which we think very persuasive in support of our conclusion. It is the case of Williams v. Castleman, 112 Texas, 193. The opinion was by our present Supreme Court, speaking through Chief Justice Cureton. In that case, the City of Breckenridge had suddenly acquired a population of more than eight thousand. This was due to an oil boom. The Commissioners' Court of the county had decided it was necessary to have an additional justice of the peace in this new city. The old justice of the peace objected to the additional one on the ground that according to the most recent United States census Breckenridge did not show the requisite population for two such officials. The contention of his counsel, as taken from the opinion, was:

"Whenever the taking effect of any law is made to depend upon the number of population of any locality, and the law itself makes no provision for the method of determination and ascertainment of the number of population of said locality, then such population is determined solely and only by the most recent United States census."

That contention was overruled by the court. It was held that the Commissioners' Court *under the Constitution* could determine for itself at any given time whether or not a precinct or any part thereof was entitled to an additional justice of the peace. It was not dependent upon the United States census. We quote as follows from the opinion:

"If the Commissioners' Court is restricted to population, as determined by the United States census reports, available but once in 10 years, then the express provision that the county is to be divided into precincts for the convenience of the people (a power which we have seen is potential and may be acted upon at all times) is defeated by the suggested limitation of the census reports."

In the Castleman case, the United States census rule was held to be an infringement upon the constitutional right of the Commissioners' Court. For like reasons, we think such a rule contravenes the constitutional right of Magnolia Park to adopt or amend its own charter *at any time* after it has more than five thousand inhabitants. Being in violation of the Constitution, the statute must fall.

This statute is but an indirect method of taking away from cities of more than five thousand people their right to enjoy the privileges of the Home Rule Amendment. Such indirect methods

cannot be upheld. In this connection, we quote from Chief Justice Gaines in the case of Brooke v. Dulaney, 100 Texas, 86, as follows:

"But when the Constitution declares that every county having a population of 8,000 shall have two clerks, the Legislature cannot, either directly or indirectly, take away the right so conferred. They cannot under the guise of fixing a mode of ascertaining the number of the population impair the mandate of the fundamental law. It follows, therefore, that if the Legislature has the right to fix the method, that method must be such as is calculated to ascertain with some reasonable degree of approximation the true population of the county, otherwise the Constitution is infringed and the counties deprived of a right granted by it."

In the Dulaney case, *the parties admitted* that the county involved had more than twenty thousand inhabitants, and yet an effort was being made under a statute to deprive said county of two clerks when a population of only eight thousand was required for that purpose. The court spoke out in vigorous language against such a denial of the constitutional rights of a county and did not permit any such denial. So, in the case at bar, it is conceded that when the annexation was attempted, Magnolia Park had twice as many people as were necessary to authorize it, under the Constitution, to govern itself. No statute can fix some other day in the distant past for determining the population of a city in order to permit its forced annexation at the present time to a larger city. Under the construction contended for by the City of Houston, any city with a population within the limitation of this statute could annex a contiguous city with a population almost equal to its own. Booms sometime come along and in ten years a city grows from less than five thousand to ten or twenty times that number. Did the people of this State intend that one such city should destroy the self-government of any other of such cities? We think not. In the Constitution itself, they have provided that such a thing should not occur after a city has a population in excess of five thousand inhabitants. The District Court of Harris County correctly decided this case in favor of Magnolia Park.

We recommend that the fifth question certified be answered in the affirmative. This settles the case. Therefore, we recommend that the remaining questions be left unanswered.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.        *C. M. Cureton,* Chief Justice.