## CITY OF FARMERSVILLE v. TEXAS-LOUISIANA POWER CO. et al.

### No. 10852.

Court of Civil Appeals of Texas. Dallas.
Nov. 8, 1930.

Rehearing Denied Dec. 13, 1930.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

W. R. Abernathy, of McKinney, for appellees.

JONES, C. J.

This appeal is from an order of the district court of Collin county, dissolving a temporary writ of injunction that theretofore had been issued on an ex parte hearing, in favor of the city of Farmersville, appellant; and also from an order denying the application for an injunction, requested by appellant on its same petition, after the hearing on the motion to dissolve had been had and the order dissolving the temporary injunction had been entered. The following is a sufficient statement of the case to understand the issues discussed:

Appellant is a municipal corporation, organized under the general laws of the state of Texas. Appellee, the Texas-Louisiana Power Company, is a corporation chartered under the laws of the state of Delaware, and for some time has been supplying appellant's inhabitants with electrical light and power, and also has been supplying other towns in Collin and adjacent counties. Appellee M. D. Honaker is a local agent of the power company and is in general charge of its operations within the corporate limits of appellant. The term appellee will refer to the power company. From some date in 1926 to some date in 1928, appellee furnished its electric power under a published schedule of rates, which allowed no discount for prompt payment, and which provided a minimum rate of $1.50 per month from any user of electric power. A slight increase, mainly affecting domestic consumers, was made in these published rates and remained in force until the early part of February, 1930, when an entirely new schedule, much lower in price to the consumer, was put in force and maintained up to the time of the hearing in the trial court.

During the year 1929, after considerable agitation by the citizens of Farmersville, because of dissatisfaction with the 1928 increase in the rate, appellant's governing body availed itself of the right, accorded cities and towns in this state, to purchase and install its own electric light plant. This electrical machinery was purchased on time payments under the provisions of the statutes of the state authorizing such purchase. The municipally owned electric light plant began operations in February, 1930, under a schedule of rates fixed by ordinance, after an investigation as to what would be reasonable rates. The schedule fixed by this ordinance, after such investigation, was the same schedule appellee had enforced until the increase in 1928, except that it provided for a 10 per cent. discount on all monthly bills that were promptly paid when due. Appellant's light plant furnished the current for the street lighting within its corporate limits, and increased the number of street lights that had theretofore been installed, under appellee's regime, from 65 to 75, and also furnished all consumers of electric power, who desired its service. In respect to the purchase, installation, and operation of its electric light plant, appellant conformed to the provisions of the statutes authorizing and controlling municipal corporations engaging in such business. Appellee's rates are much less than appellant is allowed to charge, and, as result of this, and the activity of appellee's agent in soliciting business, approximately fifty users of appellant's electric power have changed from appellant to appellee.

On May 5, 1930, appellant passed two ordinances having for their purpose the regulation of the rates of compensation to govern public utility companies furnishing electric lights to its inhabitants, as authorized by article 1119, R. S. 1925. These ordinances were regularly and duly enacted, provided appellant, at the time it undertook to assert this power of control over a public utility, had more than 2,000 inhabitants, as required by Article 1119, supra. The verified petition alleged that appellant had a 2,000 population, as shown by the next preceding census. The ordinance subsequently enacted, fixing a schedule of rates, fixed the same schedule that had been used by appellee up until the year 1928 when it made the slight increase of rates, except that the ordinance provides for a 10 per cent. discount for prompt monthly payment, and the schedule fixed presents the same rate as that charged by the municipal plant prior to the enactment of the said ordinances.

Appellee refused to conform to the schedule of rates fixed by the ordinance, and continued in force its very low schedule of rates that existed prior to, and at the time of, the passage of the ordinances. Appellant alleges that this later schedule of rates is much below the cost of production and distribution of the electric current, and that it is put in force for the express purpose of destroying its municipal plant in order that appellee may have a monopoly of such business within appellant's corporate limits; that in the town of Princeton, only eight miles distant, it charges consumers the old schedule of rates, and enforces such schedule of rates in all other towns it serves. Copies of the various

ordinances here referred to are attached as exhibits to appellant's petition and are specifically made a part thereof.. Appellant alleges damages by reason of the wrongful acts of appellee in keeping in force its present schedule of rates and seeks to recover damages therefor, and by appropriate allegations seeks to recover exemplary damages.

Appellant seeks a permanent injunction on the ground of violation by appellee of its said ordinance, because it has no legal remedy therefor, and, further, on general grounds of equity, alleged to exist in its favor independent of its ordinance establishing a schedule of rates. Its allegations as to both grounds are full and complete, but we do not deem it necessary for this review to make a full statement of matters therein set out. Appellant also prays for the immediate issuance of a temporary writ of injunction to prevent the further violation of said ordinance pending final trial, and to prevent during such time the further commission of the alleged wrongful acts of appellee. Its prayer is as follows: "Wherefore, premises considered, plaintiff prays that the defendants be cited to appear and answer herein, and further prays for judgment, for damages, actual and punitive, in the amount hereinabove set out, and further prays for perpetual injunction in the premises, restraining defendants from further commission in the acts and conduct hereinabove specifically set out, and further particularly prays that this court forthwith issue its most gracious writ of temporary injunction, restraining defendants from further soliciting any consumers of electric energy in the City of Farmersville to take electric current exclusively from the corporate defendant at its said reduced rate hereinabove referred to and further restraining said defendants from accepting any payments for electrical energy that it may furnish to any customers who may become such after the issue of this writ at other rates than those specified by the city ordinance above set out. Plaintiff further prays for all other relief, general and special, legal or equitable, to which it may be in law and equity entitled."

While appellant's petition alleges that it has suffered damages by reason of the wrongful acts of appellee, in putting forth, and continuing in force, a schedule of rates much lower than the rates fixed by ordinance, and seeks a recovery of damages suffered thereby, such recovery is only incidental to its main suit. The real and permanent relief sought by appellant is the issuance of a permanent injunction restraining appellee from promulgating any schedule of rates other than that fixed by ordinance. The suit therefore is primarily an injunction suit, invoking the equity powers of the court to prevent a continuing commission of alleged wrongful acts by appellee to appellant's injury.

The temporary relief sought by appellant in its prayer for the immediate issuance of a temporary injunction is, in effect, an attempt to secure at once, in advance of an adjudication and before a final trial on the merits of its claim, the full relief it could obtain at such final trial. In other words, if the temporary writ of injunction, issued ex parte, had not been dissolved by the trial court, the position of the parties, as it existed at the time the controversy arose, would have been reversed, in that appellee and not appellant would have occupied the position of seeking to enforce a right which had been wrongfully invaded by the other party.

In all appeals from an interlocutory order granting or refusing to grant, dissolving or refusing to dissolve, a temporary writ of injunction, the sole question presented is, Did the trial court abuse its discretion in entering the order from which the appeal is prosecuted? In the instant case, the question is, Did the trial court abuse its discretion in dissolving the temporary writ of injunction on the motion of appellee, and in refusing to issue a writ of temporary injunction on the same petition after the order of dissolution had been entered? Both orders, therefore, present substantially the same issue to this court.

An interlocutory injunction is a provisional remedy allowed before a hearing on the merits with the sole object to preserve the subject in controversy in its then existing condition. It merely prevents the doing of any act whereby the right in controversy may be materially injured or endangered before a final decree can be entered by the court. The rights of the parties are not concluded by the interlocutory order entered, as its entry is not dependent upon the adjudication of the merits of the case. In general, it may be stated that it is the duty of the trial court to grant a temporary writ of injunction when it is made to appear that there is a substantial controversy between the parties, and that one of the parties is committing an act or threatening the immediate commission of an act that will destroy the status quo of the controversy, before a full hearing can be had on the merits of the case and final judgment pronounced. It may also be stated that generally it is the duty of a trial court to refuse an application for a temporary writ of injunction when the effect of the operation of such writ would be to change or destroy the status quo of the matter in controversy. James v. E. Weinstein & Sons (Tex. Com. App.) 12 S.W.(2d) 959, and cases cited therein; Welsh et al. v. Carter (Tex. Civ. App.) 30 S.W.(2d) 354, and cases cited therein; 32 C. J. 20, and cases cited in notes. It necessarily follows that, if a trial court has granted a temporary writ of injunction under the first condition above named, there is no abuse of discretion; and

if a court refuses to grant such writ, or dissolves a writ of injunction theretofore granted ex parte under the second condition above mentioned, there could be no abuse of discretion.

Applying the above principles to the instant case, if the temporary writ of injunction, granted to appellant without a hearing, would have performed only the function of preserving the then existing condition of the subject-matter in controversy in the suit, then the court rightfully granted the writ; and if such had been the condition, it would have been error to dissolve the injunction. On the other hand, if the operation of the temporary writ of injunction would have been such as to change the then existing condition of the controversy by giving to appellant, in effect, the position hitherto occupied by appellee in respect to the property right in its franchise appellee was asserting and appellant denying such right to assert, at the time the controversy arose, then there was an abuse of discretion in granting the said injunction, because its operation would have been to change, and not to preserve, the status quo of the controversy, and there was no error in the subsequent order of dissolution. Hence, it follows that the specific question to be decided on this appeal is whether it was necessary for the issuance of the temporary injunction to maintain the status quo of the controversy until a final hearing in the case.

By its suit, appellant has invoked the jurisdiction of a court of equity to grant it relief by means of a permanent injunction, to compel appellee to adopt and use only the schedule of rates for electric power fixed by its ordinance. In order that a final decree of a court of equity may operate upon the parties and the subject-matter of the litigation as' such controversy existed at the time the court's jurisdiction was invoked, it is the general rule that the status quo of the controversy should be maintained, pending a trial of the merits of the case, and it must be inferred that appellant believed the issuance of the temporary injunction was necessary to effect such purpose. What is meant by the term "status quo" as thus used? The general rule is that it refers to the last actual, peaceable, noncontested status of the parties to the controversy, which preceded the pending suit, and which should be preserved until a final decree can be entered. · Fredericks et al. v. Huber et al., 180 Pa. 572, 37 A. 90; 32 C. J. 21.

What was this last actual, peaceable, non-contested status which preceded the filing of this suit? Manifestly, this must be determined from the status of the parties to the subject-matter of the suit, at the time appellant enacted its ordinance, for this was the first formal act of appellant which challenged the exercise of the property right in its franchise appellee was using when it promulgated its extremely low schedule of rates. This challenge of the right of appellee in this respect precipitated the controversy between the parties which culminated in the filing of this suit. The status quo to be preserved by the court is the condition of the parties·and their relation to the controversy as it existed at the time this ordinance became effective. Such condition was that, for some weeks prior to the enactment of the ordinance, appellee was using this reduced schedule of rates for electric power and light. The suit by appellant seeks a judgment that would destroy this existing status, compel appellee to abandon its reduced schedule, and adopt.the schedule of rates prescribed by the ordinance. The temporary injunction issued gave to appellant at once the full equity relief it prayed for upon final hearing of the case. The court, on motion of appellee, dissolved the injunction thereby leaving the status of the parties as such status existed at the time the controversy arose. There was no error in this.

There is another reason equally as potent why the trial court did not err in dissolving the temporary writ of injunction and in refusing to grant such writ on the same petition after such order was entered. The writ of temporary injunction sought by appellant would place the parties in exactly the same position in which they will be placed if appellant shall prevail upon a final hearing of the case. It therefore appears that the full and final relief which appellee seeks in the main purpose of its suit would be awarded it by the issuance of a temporary injunction, without giving to appellee its day in court. This is not the office of a temporary writ of injunction, and only in exceptional cases could a temporary injunction effecting such result be granted. James v. Weinstein & Sons, supra; Welsh et al. v. Carter et al., supra; 32 C. J. 20, supra; Fredericks et al. v. Huber et al., supra.

Article 1119, R. S. 1925, declares that: "The governing body of all cities and towns in this State of over two thousand population, incorporated under the general laws thereof, shall have the power to regulate by ordinance, the rates and compensation to be charged by all water, gas, light and sewer companies. * * *" By this article the Legislature of this state has delegated to the governing body of all cities and towns of over 2,000 population the right to fix by ordinance the rates to be charged by public utilities operating within the corporate limits of such city or town. It is only through this delegation of power that appellant had the right to pass the ordinance in question, and it is given this power only in the event there is within its corporate limits more than 2,000 inhabitants.

276

Appellant contends (1) that there should be read into the above-quoted clause of this enactment the phrase, "as shown by the next preceding United States census"; (2) that, if it be mistaken in this contention, then the fact of the existence of the necessary population must be determined by the governing body of the city attempting to exercise such power, and that it must be presumed that the governing body of such city did not attempt to exercise such power until it had ascertained the existence of the required population. Appellee alleges that the required population did not exist at the time of the passage of the rate ordinance, and submitted proof establishing the fact that the count of appellant's population by the 1930 census enumerator had been completed prior to the passage of the ordinance, and that this count had been rechecked by the chamber of commerce and finally accepted as the established population of appellant at said time, and that the population thus established consisted of materially less than 2,000, to wit 1,878. Appellee did not specifically plead fraud by appellant's governing body, in ascertaining the requisite population existing to authorize it to exercise the power of rate making. The 1920 census report shows that appellant had a population in excess of 2,000 inhabitants.

We overrule appellant's first contention on the ground that there is nothing in the enactment to show that the Legislature intended to take any United States census report as a basis for the required population.. The article in question is a law delegating power to a subordinate legislative body, and we are not authorized to extend its terms. City of Houston v. Magnolia Park, 115 Tex. 101, 276 S. W. 685; Williams v. Castleman, 112 Tex. 193, 247 S. W. 263.

 We think it is reasonably apparent that the population of the city or town made the subject of this legislative enactment must be determined at the time the particular city or town attempts to exercise the delegated power granted by the enactment. We agree with appellant's second contention that the ascertainment of the fact of the requisite population is committed to the governing body of the city or town desiring to avail itself of the provisions of article 1119. When a governing body acts under the provisions of such article, it must be presumed that it did determine the fact of the existence of the necessary population, and such presumed finding can only be attacked on the ground of fraud, and that this ground must be both pleaded and proven by the party attacking the power of any city acting under the provisions of article 1119. In the instant case, at least a substantial controversy is shown to exist as to whether such legal fraud was committed at the time the ordinance was enacted. It is true that no fraud was alleged by appellee, but in cases of this kind we can not assume that appellee will not amend its pleadings in

this respect so that, at the final trial, it may introduce evidence shown to exist.

We are therefore of opinion that no abuse of discretion is shown by the trial court, and that the judgment should be affirmed.

Affirmed.

### On Motion for Rehearing.

██ In its motion for rehearing, appellant earnestly insists that the original opinion in this case is in error in holding that the record before us raised the issue of legal fraud in respect to the determination by its governing body of the fact that appellant had the requisite population of more than 2,000 when the rate making ordinance in question was enacted, because appellee's pleading did not raise such issue. It is true that there was no specific pleading by appellee presenting such issue, and the original opinion so holds. A re-examination of the pleadings of both appellant and appellee, however, convinces us that the facts necessary to raise such an issue are alleged. The first paragraph of appellant's petition contains the following allegation: "That the plaintiff at the time of the purchase of the municipal plant, as hereinafter set out, and the adoption of the rate ordinance, hereinafter mentioned, the city had a population of over 2,000 as determined by the next preceding Federal census." This is the only allegation in the petition in respect to appellant's population at the time the rate making ordinance was enacted. This allegation is capable of no construction other than that of an admission by appellant that its governing body determined the existence of the necessary population of the city alone from the fact that the 1920 census report showed the existence of the required population to give it the statutory right to exercise the rate-making power. Appellant's attorney, in the motion for rehearing, adopts such construction in his argument in respect to the issue of legal fraud. This argument in part is: "His petition (the petition drawn by the attorney) disclosed that he plead the evidence upon which the population was determined, viz., the 1920 Federal census returns, being the last official published census rendered within the purview of Holcomb v. Spikes (Tex. Civ. App.) 232 S. W. 891."

In its answer and motion to dissolve, appellee's pleading contained this allegation: "Defendants, further answering herein, say that, as a matter of fact, the City of Farmersville did not possess or have, when this suit was instituted, nor at the time said City of Farmersville sought by ordinance to regulate the rates and compensation of the light company, a population of as many as 2,000 people."

This pleading of appellee is in direct response to appellant's pleading, above quoted, and is in effect a denial of the right of appellant to make the 1920 census a basis for the

right to exercise the rate-making power, authorized by statute, to be exercised by cities possessing a population of more than 2,000 at the time a city avails itself of the power of rate making for public utilities. No presumption can be indulged that appellant's population contained the same, or a greater, number of inhabitants in 1930 than it was shown to contain in 1920. If appellant's governing body exercised the rate-making power unlawfully, because of the want of the necessary population, and appellee was thereby injuriously affected in its property rights, such unauthorized and unlawful act of appellant's governing body would constitute legal fraud against appellee, notwithstanding the fact that such governing body honestly, but mistakenly, believed that the matter of the necessary poulation was determined by reference to the 1920 census report. There is nothing in this record to suggest that in passing the ordinance in question appellant's governing body acted otherwise than in good faith. If there were evidence suggesting to the contrary, then an issue of actual fraud, rather than legal or constructive fraud, would be raised. We are of the opinion that when the pleadings of both parties, on the matter of appellant's population, are construed together (and it is elementary that pleadings may be so construed), there is sufficient basis in pleading for consideration of the issue of legal or constructive fraud in the matter of enacting the said ordinance.

We have examined the cases, cited by appellant as being in conflict with this opinion, and conclude that no conflict exists. Most of the cases cited give recognition to the principle announced in this case, to the effect that a trial court does not abuse its discretion in dissolving a temporary writ of injunction, granted ex parte, in a case in which there is shown to exist a serious controversy as to plaintiff's right to the relief sought in the suit, and where the refusal to allow the injunction does not destroy the status quo of the subject-matter of the litigation, as same existed at the time plaintiff instituted proceedings to enforce his alleged rights. The motion is overruled.

Overruled.