## HODGE v. HENDRICK.

### No. 1707.

Court of Civil Appeals of Texas. Eastland.

Oct. 9, 1936.

Sayles, Sayles & Sayles and A. K. Doss, all of Abilene, for appellant.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellee.

LESLIE, Chief Justice.

This is an appeal by H. T. Hodge from the judgment of the trial court denying a temporary injunction sought to preserve the status quo of certain property pending trial of the main suit on its merits.

Plaintiff, Hodge, filed the main suit against the defendant, T. G. Hendrick, May 15, 1936, seeking to recover or establish his alleged right of possession to a building in Odessa, Tex. He alleged that he rented the same from Hendrick for the year beginning April 6, 1935, and expiring April 6, 1936, at a rental price of $600 per year, payable $50 per month in advance. He claimed the contract was renewed for the year beginning April 6, 1936, upon the same terms and that he paid the first month's rental thereunder on April 10, 1936, and that it was accepted by Hendrick.

In part, plaintiff specifically alleged that "prior to the 6th day of April, 1935, and for the purpose of forestalling and preventing competition in his said business that would cause him to operate said business at a loss or at least without a profit that he rented the States Theater building from the defendant, dealing through the agent and business manager of the defendant, to-wit, Wickliffe Skinner, for a term of one year beginning April 6, 1935." Also, that "desiring to renew said lease contract for another year upon the expiration of its former term, he called upon the said Wickliffe Skinner, agent and business manager of the defendant, in the month of February 1936 * * * and then and there made and entered into an agreement with the defendant, through his agent aforesaid, whereby and under the terms of which the plaintiff again leased and rented said theater building for a term of one year, beginning April 6, 1936, and ending April 5, 1937, at $50 per month, payable monthly in advance."

Plaintiff also alleged that subsequent to April 10, 1936, Hendrick notified him to remove his property from said building, and that on May 6, 1936, he tendered to defendant another month's rent, which was refused; that on May 13, 1936, the defendant broke from the doors of the building padlocks placed thereon by plaintiff, and took possession of the building in violation of his contract.

It was also further alleged that plaintiff operated a moving picture theater in Odessa, Tex., a town of about 2,500 people; that he rented the building from the defendant in order to keep other moving picture theaters out of town; that such fact was known to the defendant when the original lease contract was entered into; that the town would not support but one such theater, and that the defendant, if not restrained, would deliver the possession of the building in controversy to some person unknown to the plaintiff for the purpose of operating a moving picture show in competition with the plaintiff, who would thereby suffer irreparable loss and damage in the loss of patronage to the Lyric Theater then operated by plaintiff. Upon plaintiff's petition, the trial court granted a restraining order and notified defendant that on June 5, 1936, a hearing would be had to determine whether or not the temporary injunction should be granted as prayed for.

May 20, 1936, the defendant filed his verified answer urging a general demurrer, but admitted the plaintiff's allegations that he, Hendrick, was the owner and in possession of the property. In other respects, a general denial of plaintiff's allegations was made. Following such denial, the defendant Hendrick specially denied: (1) That Hodge originally leased the building from Skinner for the year beginning April 6, 1935 (first year); (2) that Skinner ever had any authority as defendant's agent to make any such rental contract with plaintiff for defendant; (3) that any such purported contract by Skinner had ever been ratified by defendant; (4) that W. H. Rhodes, another alleged agent of the defendant, ever had any authority to make a rental contract for defendant with the plaintiff, or to collect rents on any renewal of the original contract involved. The defendant affirmatively alleged:

(1) That when plaintiff attempted in the "early part" of 1936 to lease the building for another year from Skinner (beginning April 6, 1936), Skinner informed the plaintiff that he, Hendrick, was not in Abilene and that he, Skinner, had no authority to lease the property to the plaintiff, and that plaintiff would have to see defendant "and that said Wickliffe Skinner

suggested to the plaintiff that it might be advisable for him to go on using the building from month to month until he could get in touch with the defendant and see if the defendant would lease the property to him."

(2) That about the last of March, or the first of April, 1936, defendant informed plaintiff in Abilene that he would not lease the property to him any longer and instructed him not to pay any more rents. That on April 6, 1936, he wrote said Rhodes instructing him to accept no more rentals from the plaintiff. That on April 10, 1936, after the expiration of the first year's arrangement, the plaintiff, notwithstanding the above instructions, went to W. H. Rhodes' office in Odessa, Tex., at a time when said Rhodes was absent from the city, and paid the lady working for said Rhodes the sum of $50, same purporting to be the rent for the first month of the alleged second-year rental contract. That he, defendant, being a resident of Abilene, Tex., did not, know at the time of such payment until some time thereafter, and well into the month for which it was intended. That when he learned of it he again instructed Rhodes to accept no more rents from the plaintiff, but to have him vacate the building; that on May 6, 1936, he again informed the plaintiff he could not have the property and that it had in fact been rented.

(3) That the $50 paid as above set out to the lady in Rhodes' office was retained merely because plaintiff had kept possession for an additional month, although instructed on different occasions to vacate the building; that the $50 was paid merely upon the suggestion of Skinner, who had no authority to make a rental contract involving the property, and that Skinner's voluntary suggestion was solely for the purpose of giving the plaintiff an opportunity to negotiate directly with the defendant for a further contract on the building. That neither Rhodes nor the young lady had any right to accept rental on the alleged renewal contract.

(4) Further, the defendant, Hendrick, alleged that the original contract or understanding between him and the plaintiff only gave the plaintiff a permissive use or sufferance right in the building, and that it was the specific understanding between them that he, Hendrick, was to have exclusive possession and control of the building, and that at such times as the plaintiff would be permitted to have the building for temporary purposes it was the understanding that he was to go to the defendant's agent and procure the key by which to gain admission to the building. That after such permissive use the key was to be immediately returned to the defendant or his agent. That plaintiff was not given any key to the building. That the exclusive possession was thus to remain with the defendant; that the arrangement contemplated the closing of the building to a competitive business for the limited time it was kept closed by the defendant.

The pleadings of the parties are lengthy, but their substance has been set forth somewhat fully in order to reflect the various material issues of fact upon which the trial court passed.

■ At no time was there a written contract between the parties. Neither are there any findings of fact and conclusions of law in the record. The statement of facts is before us. After a very full hearing on the facts, the trial court denied the relief prayed for and the determination of the correctness of that ruling brings us immediately to the material inquiry, what was the status quo of the subject-matter of the litigation which equity protects until the trial of the main suit on its merits. In City of Farmersville v. Texas-Louisiana Power Co. (Tex. Civ.App.) 33 S.W.(2d) 272, 275, it is said: "The general rule is that it refers to the last actual, peaceable, noncontested status of the parties to the controversy, which preceded the pending suit, and which should be preserved until a final decree can be entered."

■ With this principle in mind, it becomes necessary to examine the testimony in order to determine who held the actual, peaceable, noncontested possession of the building in controversy at the time and preceding the original suit. In doing this, we look to the appellee's testimony and give it controlling effect.

The defendant, Hendrick, was called by the plaintiff as a witness. Concerning the nature of the original rental contract and the alleged renewal contract, the witness testified in part as follows:

"A. I tell you, Mr. Hodge did not have possession of it (the building) at all—not supposed to have possession.

"Q. Weren't you notified in April of this year, or possible the month of March (1936) that H. T. Hodge had caused the doors of the State Theater building (in controversy) to be padlocked? A. Yes sir. * * *

"Q. Did you know that he did that because of your protest about their taking possession of the building and putting his stuff out of the building? A. He did not have possession of it in the first place. Hodge had never had possession of it. He had no right in there at all. * * *

"Q. You did tell him (Rhodes) to break the padlocks? A. Yes sir. * * *

"Q. And he did that? A. I told him to do it after the 6th of May (1936).

"Q. He did go and did break the padlocks? A. I think so.

"Q. And forcibly entered the building by breaking the padlocks? A. That brings up the same story. Mr. Hodge did not have any possession of it in the first place when he went in there and took forcible possession. * * *

"Q. He had some projectures etc. * * * in the theater? A. He had some stuff. I do not know what he had, but he did not have any right to have it in there at all."

### Cross-Examination.

"Q. Mr. Hendrick, now tell the court please sir what agreement you did have with Mr. Hodge for the year 1935 (first year)? A. Mr. Hodge wanted to rent the building. I had the building fully equipped, fully furnished, with $3,500 or $4,000 worth, lot of stuff.

"Q. Furnished for what? A. A moving picture business. * * *

"Q. What did he say to you about wanting to lease or rent or getting possession of the building, if anything? A. He offered to rent the building. I was only getting fifty dollars a month for it, which was such a small amount I says, no, I will close it up, so there won't be a picture show go in it. I reserve the right to cancel this agreement or to sell the property any time I want to but I won't put a picture show, not allow a picture show to go in it for the next year. * * *

"Q. And what did Hodge say about or to your proposition that you were to keep it closed and subject to sale? A. All right. He said all he wanted was to see that there would not be another picture show opened up in it.

"Q. Did you tell him he would have the right to run a picture show in it? A. We discussed that; he says, in talking about keeping the building locked up, he says, once in a while, he says, there is a traveling show, he called it, comes to town, and I would like to have the right to use the building to accommodate this traveling show when it comes to town. I says, all right, if you want in, I says, go to Mr. Rhodes' office and get the key, go up there and have your show, and when they do show, lock it up and take the key back to Mr. Rhodes. I had that kind of an understanding with him.

"Q. Did you or not give Mr. Hodge a key to the building when you first had your agreement in April 1935? A. I did not give him any key. He was not supposed to have any key.

"Q. * * * If Hodge put a lock on that building it was without your knowledge and consent? A. Yes sir. He had no right to put any lock on it."

Obviously, this testimony is material on the question of who held or was rightfully entitled to the possession of the building preceding this litigation. It is undisputed that Hendrick owned the building. The plaintiff claimed to have and to be entitled to its possession by virtue of an express contract. The testimony quoted is strong support for the trial court's possible conclusion that Hendrick was in the possession of the property, or entitled to the same, and that the plaintiff initiated this litigation and disturbed his (Hendrick's) possession. The defendant so alleged and the testimony as a whole is easily susceptible to the construction that the court denied the relief sought on the ground that to grant the same would amount to a wrongful transfer by injunction of the rightful possession from the defendant to the plaintiff. Such would have been against the spirit of those decisions which announce and follow the rule that it is not the function of a preliminary injunction to transfer the possession of property from one person to another pending an adjudica-

tion of title or right of possession, except in cases in which the possession has been forcibly or fraudulently obtained by the defendant, and the equities are such as to require that possession thus wrongfully invaded be restored, and the original status of the property be preserved, pending the decision of the issue of title and right of possession. Simms v. Reisner (Tex.Civ.App.) 134 S.W. 278, 280; Rogers v. Day (Tex.Civ.App.) 20 S.W.(2d) 104; Schroeder v. Rosenbaum (Tex.Civ.App.) 16 S.W.(2d) 328; Houston Funeral Home v. Boe (Tex.Civ.App.) 78 S.W.(2d) 1091; Morgan v. Smart (Tex.Civ.App.) 88 S.W. (2d) 769.

The facts of this case do not bring it within the rule announced by these authorities so as to entitle the plaintiff to the relief sought. The trial court's judgment properly construed finds that the equities of the situation involving the status quo of the property rests with the appellee. A careful study of the testimony discloses that the judgment is sustainable upon the theory and this court is without authority to disturb the same.

If the plaintiff's pleadings be interpreted as presenting a case based on rights of hold-over tenant, the result must be the same. The payment of the $50 for May, 1936, on the alleged renewal contract is fairly referable to the instruction given Hodge by Skinner that, in the absence of Hendrick, he, Hodge, might pay monthly rental on the building until he could contact Hendrick and have a definite understanding as to whether or not the original agreement could be continued for a second year. Supporting this theory of the judgment on that phase of the case is the testimony that more than once prior to the expiration of the first year's arrangement Hendrick informed Hodge that the building would not be rented to him again. Also, the $50 was not paid April 6, but on April 10th at Odessa, whereas, the defendant resided at Abilene and according to his testimony did not have actual knowledge that it had been paid until well into the month for which Skinner testified Hodge might pay rent while awaiting the return of Hendrick from the ranch. Further, Hendrick testified that he had never given either Skinner or Rhodes any authority to rent the property in controversy, or any other property belonging to him. That neither of them had any authority to re-

new a rental contract. Skinner and Rhodes were equally as positive that Hendrick had never given them any such authority.

Under no reasonable interpretation of the testimony could the instant case be more than one in which there is a clear conflict of testimony on material fact issues, and regardless of whether plaintiff seeks to recover on an express contract or by right of hold-over tenant, the judgment is sustainable under the testimony. 3 Tex.Jur. p. 1063, § 750. The same holding must be made on the issue of ratification.

This opinion will not be further lengthened by discussion of other interesting propositions suggested by the well-prepared briefs of each party. The points discussed are believed to be controlling. For the reasons assigned, the judgment of the trial court is affirmed.