Sam **JEMERSON**, Appellant,

v.

**HOUSTON–AMERICAN FINANCE CORPORATION**, Appellee.

No. 15855.

Court of Civil Appeals of Texas.

Dallas.

Nov. 10, 1961.

Fritz & Vinson, Dallas, for appellant.

Irion, Cain, Cocke & Magee, Burt Berry and Ivan Irwin, Dallas, for appellee.

YOUNG, Justice.

This suit was filed by appellant as plaintiff below for the statutory penalty under Art. 5073, Vernon's Ann.Civ.St. for collection of alleged usurious interest; and actual damages of $20,455.35 for mental and physical injuries allegedly sustained as a result of unreasonable collection efforts exerted by employees of defendant corporation. On a jury trial with submission of 20 special issues, 10 issues were left unanswered and a mistrial was declared on the tort phase of the litigation. On motion by each party for severance of the contract phase of the case from the tort action, same was granted; the court then denying plaintiff a recovery under above penalty statute, followed by this appeal.

Credit insurance premiums to amount of $274.30 were paid by appellee to an insurer for credit life, and credit health and accident insurance coverage for appellant on these four transactions; and $31.28 paid to still another insurer on the last renewal note of April 3rd, 1958 for a comprehensive theft policy on furniture; the borrower apparently making no complaint as to this last premium.

Issues Nos. 1 and 2 were to effect of whether on December 18, 1954, October 17, 1955, November 10, 1956 and April 3, 1958, defendant corporation had failed to give plaintiff the option to purchase the insurance herein from any insurer of his choice; and whether on same dates, said defendant failed to give plaintiff the option to purchase such insurance from any insurance agency of his choice. The jury answered "yes" concerning each instance inquired about. Likewise the jury answered "yes" to the inquiry of whether on November 10, 1956 and April 3, 1958, in connection with loan transactions of said dates, defendant charged plaintiff service fees in an amount in excess of the reasonable value of special services afforded by defendant to plaintiff; the amount of such excess charges on the respective dates being $11 and $10.

Defensive issues 17 and 18 inquired of whether plaintiff had voluntarily executed the "life insurance options in evidence in this case"; likewise, "health and accident options in evidence"; the jury answering "yes" in each instance. Similarly, the jury gave affirmative answers to issues 19 and 20 inquiring of whether the plaintiff had voluntarily waived the selection of any insurer or insurance agent of his own choice. These defensive issues were raised in defendant's trial amendment in allegations that plaintiff had previously obtained loans from finance companies operating under Art. 1524a–1, V.A.C.S. and had purchased both credit life insurance and health and accident insurance from agents of those companies, therefore having prior knowledge that such insurance was required before a loan is made; that plaintiff had hence

waived the right to solicit an insurance agent with regard to his own loans in the present instance when he "failed to voice a preference at the time he signed these applications for insurance." Defendant further alleged that in view of the foregoing and relying upon the conduct of plaintiff, it had granted loans to plaintiff that it would not otherwise have made; plaintiff being thereby estopped from claiming that he was not "given an option to purchase such insurance from any insurer or insurance agent of his own choice".

In defendant's motion for judgment, it alleges: "That under the undisputed evidence in this cause and as a matter of law the plaintiff is not entitled to recover any sum of money for alleged usury. Defendant shows the court that the four transactions involved in this suit are in words and figures as follows:

| Date of note | Note | Int. | Life Ins. Prem. | H & A Prem. | Cash. |
|---|---|---|---|---|---|
| 12–18–54 (18 months) | 774.00 | 100.96 | 23.22 | 56.89 | 592.18 |
| 10–17–55 (18 months) | 774.00 | 100.96 | 23.22 | 56.89 | 9.18 |
| 11–10–56 (18 months) | 630.00 | 82.17 | 18.90 | 42.53 | 0 |
| 4–3–58 (18 months) | 540.00 | 70.43 | 16.20 | . 36.45 | 0 |
| | | | 81.54 | 192.76 | 601.36 |

Total Cash & Insurance

601.36
81.54
192.76
875.66

Insurance Refund

9.00
884.66

Total Repayments

745.46"

---

Defendant's motion further stated that undisputably all of above insurance premiums charged were paid by it and forwarded to the insurance companies; also that each of the transactions involved were renewals of the original indebtedness, and that the principal sums of money advanced by defendant have not been repaid, regardless of any interest charge.

■ We must first notice appellee's objections to 8 of appellant's 11 points of error; stating that same are either multifarious under the requirements of Rule 322, Texas Rules of Civil Procedure or are not properly preserved in appellant's amended motion for new trial as required by Rules 324 and 374. We do not deem it necessary to quote the points in question because the objections made have been adequately answered in appellant's reply brief. Same are not seen to be multifarious as charged; and it must be recalled that he is here appealing from the court's overruling of plaintiff's motion for judgment on the jury verdict, which directly relates to the gist of all objections. A like inadequacy of points was charged by a defendant and overruled in Barron v. James, 145 Tex. 283, 198 S.W.2d 256, 259; our Supreme Court holding in part: "Rule 324 requires, with certain exceptions, that a motion for new trial be filed as a prerequisite to the appeal of all cases tried before juries. One

of the exceptions stated in the rule is that an assignment in a motion for new trial shall not be necessary as a prerequisite to the right to complain of the action of the court 'in rendering or refusing to render judgment non obstante veredicto, or *in overruling a motion for judgment for appellant on the verdict.'* It seems that in view of this exception petitioners, without assigning error in a motion for new trial, could complain on appeal of the court's refusal to render in their favor, * * *." (Emphasis ours.)

At the trial, appellant had objected to the submission of defendant's issues 17–20 for the reason that the word "voluntarily" was not defined, one of the essential elements of waiver not being established thereby; of no evidence or insufficient evidence to justify the submission of such issues; and that regardless of whether the jury answers to issues 17–20 would constitute a proper basis for the court's judgment for defendant, the trial court erred in rendering any judgment because the jury answers to issues 1 and 2 were in irreconcilable conflict with said jury answers 17–20.

In connection with each of the four loan transactions, plaintiff was required to sign a loan and settlement sheet which set forth the amount of cash received by the borrower, together with amounts charged for interest and insurance and the face amount of the note. Each of said instruments also contained a printed paragraph at the bottom stating: "Choice of Insurer and Agent— The option has been extended to me to purchase this insurance from any insurer or agent of my own choice, and I freely chose the insurer and agent to whom this application is made."

Plaintiff Jemerson (also his wife Lula) testified concerning the circumstances of the original loan of December 18, 1954 from which we quote excerpts:

"Q. * * * Now, how did you happen to take out insurance at the time you made that first loan? A. Well, we had insurance but he just gave me papers there to sign and said this was insurance. He didn't ask me no kind of knowledge or nothing about it. But to pay my bill when I was sick and I asked him personally about that insurance, because I carried it with the Community and he said he wasn't carrying that kind, but I see now they said we had that kind of insurance.

"Q. You say that you already had some insurance with another company? A. With the Community, I had that kind that if I got sick it would pay my payments.

"Q. * * * state what the conversation was with reference to insurance? A. Well, he said that—insurance, but he didn't ask me nothing about it. He just put the paper down and marked an 'x' and told me to sign that and that is what I did. I didn't read any of it.

"Q. State the facts as to whether or not he told you that you could take the insurance out with anybody you wanted to? A. No, sir, we didn't have any conversation about the insurance at all. * * *

"Q. State the facts as to whether or not he told you you could take the insurance out with any agent that you wanted to? A. No."

Similar testimony from plaintiff was reiterated with respect to subsequent renewals.

On behalf of plaintiff Jemerson, one Hawkins, former manager of defendant company from December 1954 to April 1955, testified as follows concerning the policy of defendant with respect to sale of credit insurance in connection with personal loans:

"Q. From December, 1954, until you left, what were your instructions? A. We were to include life and accident and health insurance on each loan.

"Q. * * * were those instructions followed? A. Yes. * * *

"Q. All right. During that period of time that I was referring to, from Decem-

ber, 1954 until you left in 1955, state the facts in what · company, what life insurance company and health and accident insurance company those policies were sold in connection with the loans? A. You mean what company they were—

"Q. Yes, sir. A. Houston-American Life Insurance Company.

"Q. Now, was that true of all loans that were made during the period of December, 1954, until you left them, January of fifty—until April of 1955? A. That is right.

"Q. Were you permitted or anyone else in the office permitted to sell insurance in any other company? A. No.

"Q. State the facts as to whether the borrowers during that period were given the option to purchase insurance from a company of their own choice? A. No.

"Q. During the period you were Manager of the Dallas office from December, 1954, until April of 1955, were the borrowers ever given the option to purchase insurance from a company of their own choice? A. No.

"Q. Were they during that period ever given option to purchase insurance from an agent of their own choice? A. No.

"Q. And this was true of both life and health and accident insurance, wasn't it? A. That is right."

And Mary Winn employed by the defendant from January 1955 through August 1958, first as typist and then as assistant manager, testified that throughout her employment she did not recall a person making a loan without purchasing credit insurance from Houston-American Life Insurance Company; that she received her instructions from the managers of the defendant office; testifying as follows:

"Q. Well, now, these instructions that were given you by managers, did they give you—did they authorize you to sell any insurance in any other company besides Hous-ton-American Life Insurance Company? A. No."

On the other hand appellee under a counterpoint quoted excerpts from the testimony of Lula Jemerson in regard to one of the loan applications, executed by her that "I knew it was there but I didn't read it"; and to the question "did you want the insurance," replied "I don't know. It didn't make any difference to me one way or the other;" that both Jemersons had ample opportunity to read and examine the instruments, particularly those pertaining to the transaction of November 10, 1956 because they were given him to take home over night in order that his wife might sign them; Sam Jemerson testifying "I knew I was taking out insurance" and said that he didn't blame anyone for his failure to read the option agreement. He later received a refund on a credit insurance premium of $8.

■ Here it will be noted that under jury answers 1 and 2, defendant failed to give plaintiff the option to purchase the insurance from an agent or insurer of his own choice. Appellant argues that in view of these answers and the foregoing testimony of the Jemersons, Hawkins, and Mrs. Winn, this defendant never made known to plaintiff any right to select any insurance and insurer or agent of his own choice; and hence that he was never in a position to assert or relinquish such a right. But, says appellant "if the meaning of 'voluntarily', when applied to signing an instrument, as in the instant case, implies actually being given a choice, and knowing what the choice is, then there is a necessary and irreconcilable conflict between 'voluntarily' executing such an instrument and being denied the choice. In the instant case, the jury found plaintiff 'voluntarily' executed the statement that he had then been given an option. And the jury also found that defendant failed to give any such option. Under this meaning of 'voluntarily', there is an irreconcilable conflict between these two sets of answers." With this argument we agree.

In a situation closely analogous it was concluded in Continental National Bank v. Hall-Page Tire Co., Tex.Civ.App., 318 S.W. 2d 127, 128 that "both answers cannot be correct." And * * * "When material answers are conflicting, the verdict is destroyed and there is nothing on which to base a judgment." See also 41–B Tex.Jur. pp. 802–807.

In motion for judgment appellee further asserts no usury on face of the four transactions under the foregoing history thereof, a conclusion which appellant denies, the latter in turn claiming usury on basis of jury answers 4 and 5—excessive service charges—of $21; entitling him at least to a judgment for double damages in that amount, or $42. Be this as it may, in our opinion, the trial court should not have endeavored to render a final judgment on the contract phase of the case; but instead should have ordered a mistrial by reason of the conflict of issues as above discussed.

The judgment under review is accordingly reversed and cause remanded to the trial court.