**CITY OF LA PORTE, Appellant,**

**v.**

**STATE of Texas ex rel. W. M. ROSE et al.,
Appellees.**

**No. 11154.**

Court of Civil Appeals of Texas.

Austin.

March 18, 1964.

Rehearing Denied April 8, 1964.

Kiibler & Kiibler, La Porte, Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., Dallas, for appellant.

Joe G. Resweber, County Atty., W. K. Richardson, Asst. County Atty., R. H. Burks, City Atty., W. Lawrence Cook, First Asst. City Atty., Sears & Burns, Houston, Shannon L. Morris, Baytown, for appellees.

PHILLIPS, Justice.

This is a suit to establish whether or not certain ordinances purportedly annexing land by the City of La Porte are valid or whether an ordinance enacted by the City of Houston purportedly annexing the

same land was prior in time and annexed the land in question.

The action was brought in a quo warranto proceeding originally filed on the relation of W. M. Rose, Dean Johnson and Albert R. Perkins, challenging the validity of annexation proceedings of the City of La Porte as to a certain small area in Harris County. Thereafter the City of Houston was added as a relator, and the information was amended to attack the annexation jurisdiction of La Porte as to a much larger area and on a number of additional grounds.

Houston alleged that the area was all under the annexation jurisdiction of Houston rather than La Porte by reason of Houston Ordinance No. 60-989, adopted on first reading on June 22, 1960. The La Porte Ordinance 587 covering the greater part of the area in issue which was passed on first reading on June 6, 1960, some sixteen days before the Houston Ordinance. La Porte Ordinance No. 587 was specifically attacked as having an inadequate description. In addition, La Porte Ordinances Nos. 473, 493 and 550 were passed annexing part of the land in controversy. These latter ordinances all preceded the first reading of Houston Ordinance 60-989 and no question was raised as to the adequacy of their description.

Houston Ordinance 60-989 purports to annex all territory within Harris County not hitherto appropriated by any other municipality.

A quo warranto proceeding was also filed in District Court in Harris County on the relation of W. R. Hays, Charles Hitt, Raymond Neil, Ray Sandy and John Garies, being No. 595022, and attacking the claim of municipal authority and annexation jurisdiction by the City of Houston over the area in question and in particular the application of Houston Ordinance No. 60-989 thereto. These relators were allowed to intervene in the present suit on the side of La Porte.

The case was tried before a jury for some two weeks and the issues and the jury's answers thereto were as follows:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that, on March 22, 1949, the City of La Porte did not have more than 5,000 inhabitants?

"Answer: 'It did not have more than 5,000 inhabitants' or 'It had more than 5,000 inhabitants' as you find the facts to be.

"Answer: It had more than 5,000 inhabitants.

"In connection with the foregoing Special Issue, you are instructed that the resolution of the City Commission of the City of La Porte of December 21, 1948 purporting to determine the population of such city as of both December 1, 1948 and as of the date of its adoption is not, as a matter of law, final and determinative of the question of the population of such city on the date of the Home Rule Charter election, March 22, 1949.

"SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that, on June 6, 1960, a projection of the course of the center line of the last meander of Taylor Lake and Bayou would not have intersected the center line of Clear Lake for a corner?

"Answer: 'Such projection would not have intersected such center line of Clear Lake for a corner' or 'Such projection would have intersected such center line of Clear Lake for a corner' as you find the facts to be.

"Answer: Such projection would have intersected such center line of Clear Lake for a corner.

"In connection with the foregoing special issue, you are instructed as follows:

"In proceeding along the center line of Taylor Lake and Bayou and following its meanders, a new meander began whenever the center line of Taylor Lake and Bayou changed its direction.

"SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that La Porte Ordinance No. 587 as passed by the City Commission on June 6, 1960, contained, between the first and second running calls of ordinance 587 as appearing in Defendant's Exhibit 9A, a call south from Spencer Highway down the east line of the W. M. Jones Survey to the south line thereof?

"Answer: 'Yes' or 'No'.

"Answer: No.

"SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that the La Porte City Commission intended La Porte Ordinance No. 587 to have the east line of the W. M. Jones survey as one of its boundaries?

"Answer: 'Yes' or 'No'.

"Answer: Yes."

Defendant filed its motion for judgment on the jury verdict, while plaintiff filed a motion to disregard the jury's answers to Special Issues 1 and 4 and a motion for judgment notwithstanding such issues. The court granted the motions of plaintiff, disregarded the jury's findings on Special Issues 1 and 4, and entered judgment that the Home Rule Charter of the City of La Porte, adopted at a special election on March 22, 1949, was wholly void and invalid; that all annexation ordinances adopted by La Porte after March 22, 1949, were wholly void and invalid; and that La Porte be perpetually enjoined from exercising or

attempting to exercise or claiming any municipal authority or annexation jurisdiction within any portion of the area in question.

Defendant duly excepted, gave notice of appeal, and has perfected its appeal to this Court.

We reverse the trial court and render judgment that defendant's (La Porte) Home Rule Charter is valid and that the annexation ordinances hereafter specified were valid.

For the purposes of this opinion the parties will be referred to as La Porte and Houston.

The greater part of this proceeding was taken up with the attempt of Houston to prove that the Home Rule Charter of the City of La Porte was and is null and void inasmuch as the population of La Porte was less than 5,000 inhabitants at the time the charter was adopted. Article XI, Section 4, of the Texas Constitution, Vernon's Ann.St. requires that cities and towns having a population of five thousand or less may be chartered alone by general law.

In 1912 the voters of Texas adopted the "Home Rule Amendment", Article XI, Sec. 5, of our Constitution relating to the government of cities of more than 5,000 inhabitants. Under the authority this amendment and the enabling act, Article 1175, Sec. 2, Vernon's Ann.Civ.St., Home Rule cities have the power to extend the city limits and to annex territory.

It has been the position of the City of La Porte throughout this proceeding that its population on March 22, 1949, the date of the election adopting its Home Rule Charter, was not a fact issue for determination herein, the finding of the City Commission at the time being binding and conclusive. The trial court, however, did allow the issue to be tried and the jury found in favor of La Porte answering that it did have a population in excess of 5,000. The following is a copy of the resolution

passed by the Board of Commissioners of the City of La Porte on December 21, 1948, determining the population to be more than 5,000 inhabitants:

## "RESOLUTION

"WHEREAS, the City Clerk reported on the survey he had been instructed to make with the utilities in the City as follows:

"City Water Department records show the number of water connections in 1940, the date of the last Federal census, to be 527 and the number of water connections in the City on December 1, 1948, to be 909;

"The Houston Natural Gas Corporation had 527 consumers in the City in 1940 and on December 1, 1948 had 905 consumers;

"The Houston Lighting & Power Company on December 1, 1948 had 1073 consumers in the City; the exact number of consumers in 1940 is not available but the present number of consumers is approximately double that of 1940; and

"WHEREAS, based upon a population of 3072, as shown by the 1940 Federal census, the population of the City of La Porte on December 1, 1948, is indicated as follows:

"City Water Department, 5454 inhabitants;

"Houston Natural Gas Corporation, 6678 inhabitants;

"Houston Lighting & Power Company, 6144 inhabitants; and,

"WHEREAS, the Engineer's report on Extension of the Water and Sewer systems for the City of La Porte, dated August 18, 1947, made by Wyatt C. Hedrick, Engineer, Houston, Texas, shows the population in the spring of 1947 to be 4200 inhabitants, with 1015 houses; and

"WHEREAS, said Engineer estimated that when the houses increased to 1258 there would be a total population of 5200 persons; and

"WHEREAS, the City permits show that 269 additional houses were constructed in the City of La Porte from April, 1947 to December, 1948, making a present total of 1384 houses, showing an increase in population to a present total of 5724 inhabitants in the City of La Porte; and,

"WHEREAS, the Federal census in 1920 shows the population of La Porte to be 889, the Federal census in 1930 shows the population of La Porte to be 1280 and the Federal census in 1940 shows the population of La Porte to be 3072; and

"WHEREAS, the rate of increase in population has been greater in the period since the Federal census in 1940 to date, it is evident that the population of La Porte is in excess of 6000 inhabitants; and

"WHEREAS, based upon the above information, statements of the La Porte Independent School District officials, of the City Superintendent of the Water and Sewer Departments, of business men and others in La Porte familiar with the growth and population of the City, and upon all other reliable, available information, the Board of Commissioners of the City of La Porte find and determine' that on December 1, 1948, there were 5454, and more, inhabitants in the City of La Porte; that on such date, and prior thereto, the City of La Porte had, and now has, a population of more than 5000 persons;

"NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF COMMISSIONERS OF THE CITY OF LA PORTE, TEXAS:

"That the City of La Porte, Texas, had, on December 1, 1948, and now

has, a population of more than 5000 inhabitants and here now find, determine and declare that the City of La Porte, Texas, is a City of more than 5000 inhabitants, subject to all the general laws of this State prescribing municipal powers, functions, rights and privileges for Cities and towns of more than 5000 inhabitants;

"And it is so ordered."

Houston contends that the trial court correctly disregarded the finding of the jury that La Porte had a population greater than 5000 on the date in question because there is no evidence, rising above the level of surmise, speculation or conjecture showing or tending to show this fact. That the undisputed and judicially known facts in the record established, as a matter of law, that La Porte did not have the population claimed at the time.

Houston then introduced United States Census reports for the years 1940, 1950 and 1960 showing the population of La Porte to have been 3072, 4429 and 4512 respectively for the years enumerated and that while the census in 1940 was taken in a territory of only 1200 acres, the area covered in the 1950 census had been greatly enlarged. That the La Porte City Directory for 1948 as of August 7, shows the population to be 3055.

Houston then proceeded to take each method shown to have been used to determine the population of La Porte and attempts to point out the unreliability and unreasonableness of such a method to ascertain the actual number of people living in La Porte at the time.

The City of La Porte introduced the testimony of the two surviving members of the Board of Commissioners who helped to pass the resolution on population set out above. They also testified that the engineer McAfee of the Wyatt Hedrick firm made a physical count of all the houses, the number of utility connections were obtained from the utility company; that the peak population of La Porte was in the latter part of 1948 and the first half of 1949 when there were many construction workers living in town because of the large construction projects going on in the area at the time. There was also testimony from a number of witnesses in addition to the two former commissioners as to the many apartments, hotels and other multiple residential units having only one water connection for the whole building; the many trailers in trailer camps and in the yards of private houses which had no water connections. That in addition to the town being crowded by the large number of construction workers at that particular time, many families had moved in from Texas City because of the explosion that had occurred there. Much of the testimony of the type related above was cumulative but it all tended to show that La Porte had reached a peak at this time.

■ We hold that the method employed by the City of La Porte to ascertain their population was a reasonable and suitable one and they had the implied grant of authority to so determine their population upon which the right to become a Home Rule city depended. There was substantial evidence presented at the trial to support the result, findings and conclusions in the abovementioned resolution. City of Tyler v. Tyler Building and Loan Ass'n., 98 Tex. 69, 81 S.W. 2; see Attorney General's Opinion No. WW–1491.

La Porte's first point of error is that the trial court erred in disregarding the jury's finding that La Porte had a population of more than 5,000 at the time of adoption of its Home Rule charter, which was amply supported by the evidence.

In view of our holding that La Porte's second point of error is valid, it will be unnecessary for us to answer the first.

■ The second point of error presented is that the trial court erred in trying the population issue de novo and failing to give

effect to the determination of population by the governing body of La Porte made at the time.

La Porte has contended at all times that the question of whether that City in fact had a population of more than 5,000 on March 2, 1949, was not an issue to be tried in this proceeding, the determination of the City Commission made at the time in good faith and after receipt of evidence, being binding and conclusive. This position was raised by plea in bar and abatement, motion for summary judgment, objections to evidence, motion for instructed verdict and objections to the charge.

We hold that the City of La Porte is correct in this contention and that, in the absence of fraud or actions grossly arbitrary and such questions are not present in this case, the finding of the Commission as to population was final and conclusive.

In Williams v. Castleman, 112 Tex. 193, 247 S.W. 263, the Supreme Court held that acts of discretion and findings of fact on the part of public officers such as Commissioners' Courts in the exercise of the powers granted them by the Constitution and statutes, including determination of population, are conclusive and will not be reviewed by the courts. It was further held that where a constitutional provision depends upon population the commissioners may determine population from other sources of information than the Federal census and that the Federal census is not determinative. The Supreme Court here was specifically considering the constitutional provision for two justices of the peace in precincts containing 8000 or more inhabitants. The opinion expressly points out that "No method of determining the population is given in this section or elsewhere in the constitution." It was likewise pointed out that there was no express provision in the statutes as to how the question of population was to be determined. The Supreme Court held, however, that the Commissioner's Court was the proper body to make the determination un-der the constitutional provision. It is then stated:

"The judgment and discretion of the commissioners' court in the instant case having been exercised in good faith and without fraud, not arbitrarily, nor in gross abuse of discretion, there is nothing in the record which would warrant an annulment of the order, either upon collateral or direct attack.

"If it be said the commissioners' court could not judicially know the exact population of Breckenridge, still, taking into consideration what they did judicially know, and the means of knowledge and investigation shown in the certificate, it is conclusive that when they acted they had sufficient facts before them to authorize the order which they entered. No principle of law is better settled than that acts of discretion and findings of fact on the part of public officers to which such power is confided, including commissioners' courts, will not be reviewed on appeal." Citing cases.

The opinion in Williams v. Castleman was later quoted with approval in Trapp et al v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424.

In Town of Freeport v. Sellers, 144 Tex. 389, 190 S.W.2d 813, the Supreme Court again held that the findings of the Commissioners of Freeport that the town of Freeport had more than 5000 inhabitants at the time it sought to assert a right given by the Constitution of Texas based upon having such a population is final and binding and could not be contested in a court proceeding, citing Williams v. Castleman.

State ex rel. Townsend v. City of Mission et al, Tex.Civ.App., 329 S.W.2d 98, writ ref., N.R.E., holds that it is the province of the City Commission to determine facts with reference to a proposed annexation and its determination and findings are binding on the Court in a quo war-

ranto proceeding, and not subject to trial de novo. Also see School Board of the City of Marshall et al v. State by Criminal Dist. Attorney ex rel. Warbritton et al, 162 Tex. 9, 343 S.W.2d 247.

City of Houston et al v. City of Magnolia Park et al, Tex.Com.App., 115 Tex. 101, 276 S.W. 685 holds that in view of the constitutional grant of the right of Home Rule to cities of more than 5000 population the Legislature could not even by specific enactment provide that population was to be determined on the basis of Federal census. In this respect see McCormick v. Jester, 53 Tex.Civ.App. 306, 115 S.W. 278, writ dism., w. o. j.; Baker v. Partney, Tex.Civ.App., 236 S.W. 166, writ dismissed.

The cases cited above as to the finality of the governing body of a municipality in their determination of population for Home Rule or other purposes do not by any means exhaust the list. There are many more; however, as we have not been cited any Texas cases, nor have we been able to find one where the court has overturned the governing body's finding as to population because it was erroneous or incorrect, we will not belabor the point further other than to cite the validating Acts of the Legislature in this regard later in this opinion.

■ In a counterpoint Houston maintains that since La Porte failed to file a motion for new trial specifying that the trial court erred in submitting special issue No. 1 (the population issue) to the jury and erred in submitting the special instruction in connection with such issue (that the La Porte population resolution is not, as a matter of law, final and determinative of the population question), La Porte's above-mentioned second point of error cannot be considered by this Court and cites Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887.

We overrule this point.

Rule 324, Texas Rules of Civil Procedure, expressly provides that "neither a motion for new trial nor an assignment therein shall be a prerequisite to the right to complain on appeal of the action of the court in giving a preemptory instruction, or in withdrawing the case from the jury and rendering judgment, or in rendering or refusing to render judgment non obstante veredicto or notwithstanding the finding of the jury on one or more special issues, or in overruling a motion for judgment on the verdict made by the party who becomes appellant."

In the case before us the trial court not only denied La Porte's (appellant) motion for judgment on the verdict but did render judgment non obstante veredicto and notwithstanding jury findings. It is of that judgment so rendered that La Porte is complaining on appeal here. Thus, this case is within the express provisions of the rule that motion for new trial is not necessary. In this respect see Aldridge v. General Mills, Inc., Tex.Civ.App., 188 S.W.2d 407; Jemerson v. Houston–American Finance Corp., Tex.Civ.App., 351 S.W.2d 574; Bellmead State Bank, Waco v. Anderson, Tex. Civ.App., 293 S.W.2d 834.

■ Wagner v. Foster is authority for the rule that where the trial court denies a motion non obstante veredicto appeal is authorized on the grounds stated in the motion without the necessity of incorporating these grounds in a motion for new trial. A motion for new trial must be filed in order to complain of other errors not mentioned in the motion non obstante. We have no quarrel with this rule. The common sense import is to grant the trial court a chance to rectify other error not complained of in the motion non obstante veredicto through the means of a new trial. In the Wagner case the motion non obstante veredicto was denied. In the case at bar the motion non obstante veredicto was granted the City of Houston (appellee). Where the appeal is from denial of a motion non obstante veredicto, as in the Wagner case above, it is appellant's motion and it is quite proper that he be restricted to the grounds he has stated in the motion. However, if the appeal is

from the rendering of a judgment non obstante veredicto, the motion is that of appellee (Houston) not appellant (La Porte) and the appellee has stated only the grounds he has relied upon in support of his motion and not the grounds which appellant might have to oppose it. The grounds for opposing a motion non obstante veredicto are not stated in the motion, nor in any written reply thereto required in the trial court, but need only be stated by appellant in his points of error on appeal when he complains of such judgment non obstante veredicto.

The essence of La Porte's point of error No. 2 is that there is nothing for the court to try in connection with the population. This point is not a ground for new trial but a ground for judgment in La Porte's (appellant) favor and a ground against judgment for appellee (Houston). The gist of La Porte's complaint in this appeal is that the trial court erred in giving Houston judgment notwithstanding the jury findings.

In Koonce v. Campbell, Tex.Civ.App., 348 S.W.2d 272, the Court held that a motion for new trial was not necessary in the appeal from a judgment non obstante veredicto stating that it had the duty of entering the judgment that the trial court should have entered in the first place and it reversed and rendered the cause. That is the course we follow here.

▇▇ La Porte's third point of error is that the court erred in disregarding the jury's answer to special issue number 4 and holding La Porte's Ordinance 587 void because of the error of omission of one call.

The jury found that the call along the east line of the W. M. Jones Survey, although not appearing in La Porte Ordinance 587, was intended to be there, and this fact finding of intent was amply supported by the testimony. The mayor, the city commissioners, and the city attorney testified unanimously that there was only one call missing, that it was between the first running call of the ordinance appearing at the bottom of the first page in the city records and the next call at the top of the second page, and that it was intended to extend south from Spencer Highway along the east line of the W. M. Jones Survey to its south line. No one testified to the contrary.

Thus while a call was missing from Ordinance 587 under the jury finding, that is not fatal to the validity of the annexation ordinance provided that the intent can be determined, and here the jury itself has determined that intent by its answer to special issue No. 4 above. Any other finding would have been contrary to all of the evidence in the record in this regard. It is well settled in Texas that the court has the function of seeking to aid the construction and validity of descriptions in municipal annexation ordinances rather than to destroy them, and that this principle applies to the specific situation of a missing call.

In Grisham v. Tate, Tex.Civ.App., 35 S.W.2d 264, writ refused, the attack was made on a new road district on the ground that the description did not close in one place, plaintiff alleging that it was impossible for a surveyor or other person to go according to the field notes and survey said lands and that the field notes were incorrect in that there was a line missing from them from the southwest corner of a certain tract in the description to the southwest corner of another tract in the description, and, that by reason of said line being missing in the survey of the area in question, the district was indefinite as the field notes failed to close.

Houston argues in its brief along these lines. It argues that there well could be more than one call missing and they introduced testimony through a surveyor that with only the description contained in La Porte Ordinance No. 587, it would be impossible to close the area with any degree of certainty.

The court held in the Grisham case that the district was validly created and even

though there was one place where the field notes did not close, the court supplied the additional wording necessary to make the field notes close and render the description complete because it found that the intent was evident from the circumstances and evidence:

"* * * It is evident that the commissioners' court intended that the line should run from the given point in the W. line of the Adkins tract to the S.W. corner of the Turner tract. We may therefore safely assume that the court intended to follow a straight line in connecting these two points. In fact, no other conclusion can safely be drawn. In arriving at the intention of the parties, it is the duty of the court to take a common sense view of their acts. The courts should aid construction rather than become agencies of destruction. In order to accomplish the intention of the parties, we are authorized to supply the missing word." Quoting 43 C.J., 107; 18 C.J. 185.

"* * * Our courts have sustained description of land where one of the calls has been left out or where there is an entire omission of a line necessary to make the survey close." Citing cases.

The court in the Grisham case further stated that on the trial of the case, evidence was introduced showing that it was the intention of the Commissioners' Court to create the district to run the line as described by the evidence.

State of Texas ex rel. American Manufacturing Co. of Texas v. City of Fort Worth, Tex.Civ.App., 339 S.W.2d 707, writ refused, n. r. e., involved a quo warranto attack upon an annexation ordinance of Fort Worth, the primary contention being that there was a deficiency in the description of the property annexed in that there was no call joining the beginning point and the ending point in metes and bounds. The court declared the attack upon the sufficiency of the description of the boundary must fall, the description of the corporate boundaries not being required to have the particularity ordinarily found in deeds. The court cites numerous authorities in support of this rule. See also State of Texas ex rel. City of West Orange et al v. City of Orange, Tex.Civ.App., 300 S.W.2d 705, writ refused, n. r. e.; Lower Nueces River Water Supply District v. Cartwright, Tex.Civ.App., 274 S.W.2d 199, writ refused, n. r. e.

In Parker et al v. Harris County Drainage District No. 2, Tex.Civ.App., 148 S.W. 351, the Court upheld the description of the boundaries of the district against the contention that they were insufficient and indefinite but held in addition that any irregularities or omissions in the description were cured and validated by subsequent curative and validating Acts of the Legislature.

La Porte's fifth point of error (La Porte's fourth point will be discussed later in this opinion) is that the Trial Court erred in giving no effect to the validating and curative statutes applicable to the Home Rule Charter and Annexation Ordinances of La Porte.

The Legislature has from time to time passed a large number of curative acts validating the adoption of Home Rule Charters and Ordinances and proceedings thereunder, including annexation ordinances. Pertinent here are Articles 1174a–1, 1174a–2, 1174a–4 and 1174e, V.C.S.

Article 1174a–1, adopted in 1951, provides:

"In each instance where an election has been held heretofore in a city for the purpose of voting upon the adoption of a home rule charter for such city, and where copies of the proposed charter with the date of the election shown thereon were mailed to all of the voters within said city as shown by the tax rolls thereof, and a news item showing the date and purpose of said election was published in a newspaper published within such city at least thirty (30) days prior to the date of the said election,

and such news item did not state that the voting would be limited to property owners or taxpayers in the city, and where the officers holding the election did not deny anyone the right to vote upon the ground that he was not a property owner or taxpayer, and such election resulted favorably to the adoption of the charter as shown by a resolution adopted by the governing body of the city either before or after the election of assumption of office by new members of such governing body under the charter, all of the proceedings relating to the adoption of such charter and the election of and assumption of office by the new members of the governing body are hereby validated, and such charter shall constitute the charter of said city under the Constitution and laws of this State. Acts 1951, 52nd Leg., p. 64, ch. 38, § 1."·

Article 1174a–2, adopted in 1953, provides in the pertinent section:

"Section 1. In each instance where an election has heretofore been held in an incorporated city for the purpose of voting upon the adoption of a home rule charter for such city, where copies of the proposed charter with the date of the election shown thereon were mailed to all voters within said city as shown by the tax rolls thereof, and a news item showing the date and purpose of said election was published in a newspaper published within such city at least thirty (30) days prior to the date of such election, and a majority of the qualified voters of said city voting at said election voted in favor of the adoption of such charter, all such proceedings relating to the adoption of said charter are hereby in all things validated, ratified, and confirmed, and said charter shall constitute the home rule charter of said city under the constitution and laws of this State. All elections held under the provisions of said charter for the purpose of electing members of the governing body of the

city and the assumption of office by such elected members are hereby in all things validated. All acts of the city officers and officials of any such city are hereby in all things validated."

Article 1174a–4, adopted in 1959, provides in the pertinent section:

"Section 1. In each instance where an election has heretofore been held in an incorporated city for the purpose of voting upon the adoption of a home rule charter for such city, where copies of the proposed charter with the date of the election shown thereon were mailed to all voters within said city as shown by the tax roll thereof, and a news item showing the dates and purpose of said election was published in a newspaper published within such city at least thirty (30) days prior to the date of such election, and the proposed charter in its entirety was printed and published in a newspaper published within such city at least twenty (20) days prior to the date of such election, and a majority of the qualified voters of said city voting at said election voted in favor of the adoption of such charter, all such proceedings relating to the adoption of said charter are hereby in all things validated, ratified, and confirmed, and said charter shall constitute the home rule charter of said city under the Constitution and Laws of this State. All elections held under the provisions of said charter for the purpose of electing members of the governing body of the city and the assumption of office by such elected members are hereby in all things validated. All acts of the city officers and officials of any such city are hereby in all things validated."

Article 1174e, passed in 1961, provides in its pertinent section:

"Section 1. All ordinances, resolutions and proceedings passed and adopted and all contracts made pursuant thereto, prior to the 1st day of March,

1961, by a home rule city undertaking to annex adjacent and contiguous territory to its corporate limits by virtue of the provisions of Article 1175 of the Revised Civil Statutes of 1925 and the amendments thereto, or by virtue of the applicable provisions of its city charter, are hereby ratified and confirmed, and such extensions of the city limits of such cities so undertaken, as well as all proceedings and contracts taken or made in pursuance thereof and the exercise of dominion and governmental functions over such added territory, by annexation, shall be deemed and held valid in all respects and to the same extent as if done under legislative authority previously given."

It was stipulated by the parties that there was proper publication, mailing, and election in connection with the charter, within the terms of the above statutes.

In State ex rel. Burkett v. Town of Clyde, Tex.Civ.App., 18 S.W.2d 202, writ refused, the incorporation of the town of Clyde was attacked in quo warranto on the basis that it did not have the necessary population. The court in addition to holding that the determination of population by the proper official was binding and conclusive and not to be retried in court considered the question of whether the various validating statutes then in existence were effectual to cure the attempted incorporation even if it were otherwise void for failure to have the necessary population. The court concluded that this was not open to question stating: "It would seem, however, that this question is not open, for in State [ex rel. Richardson] v. Larkin (hereinafter cited and described) it was held that the validating statutes do apply in such case and writ of error was refused by the Supreme Court."

The case referred to is State ex rel. Richardson v. Larkin, 41 Tex.Civ.App. 253, 90 S.W. 912, writ refused, was a quo warranto proceeding challenging the in-

corporation of the town of Athens on the ground, among others, that the county court in ordering the incorporation election failed to hear any proof to establish that there were as many as 2000 inhabitants in the area. One of the defenses was a validating act. The court declared: "We are of the opinion that the Legislature could by special act validate defects made in an honest attempt to incorporate under the General Laws. While the Legislature could not, under the Constitution, by special act create a municipal corporation having a population of 10,000 inhabitants or less, nevertheless, it had the power by special act to pass a curative act legalizing the defective incorporation of a city already in existence under the General Laws." The court concluded that the city of Athens was a valid city apart from the special act in question and stated further: "But, should we be mistaken in this, then we conclude that the effect of the special act was to validate any supposed defects in the corporation, resulting from irregularities in petitioning to determine if an election should be held to incorporate under the General Law, or in ordering or holding of same or in declaring the result thereof, and also in including territory of four square miles within the corporate limit."

Hufstedler et al v. City of Lubbock, Tex. Civ.App., 40 S.W.2d 982, held that failure to have the 5000 population prescribed can be cured by a validating statute. Also see State of Texas ex rel. Douglas et al v. Town of Bullard, Tex.Civ.App., 312 S.W.2d 435, writ refused, n. r. e.

In a very recent case, Perkins et al v. State of Texas, 367 S.W.2d 140, the Supreme Court of Texas in a quo warranto proceeding expressly recognizes that such acts can cure invalidity arising "by reason of a failure to properly define the limits" of a municipality and that the Legislature may validate an act of incorporation or annexation even though it is "void from its inception because of an unwarranted exercise of power or because of an entire absence of power."

La Porte's fourth point, taken out of the order presented, is that the Trial Court erred in giving no effect to La Porte Ordinances 387, 392, 473, 493, and 550, which all preceded the first reading of Houston Ordinance 60–989.

In addition to La Porte Ordinance 587, its Ordinances 387, 493, 497 and 550 also all preceded the first reading of Houston Ordinance 60–989. No attack was made on the sufficiency of their descriptions.

In a counterpoint Houston maintains that the La Porte Charter provides for only a single reading of the annexation ordinance which is the final reading and must be preceded by publication. That the Commission did not follow the procedure required by the La Porte charter itself in enacting the ordinances in question; that the law requires that the charter requirements be strictly followed. Therefore, Houston Ordinance No. 60–989 is prior in time.

The wording of the charter makes it clear that more than one reading is contemplated and that publication is to follow introduction and passage on first reading and to precede final reading.

Section 10 of the La Porte Charter provides:

"The Commission shall have power by ordinance to fix the boundary limits of the city of La Porte and to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city, with or without the consent of the territory and inhabitants annexed. Upon the introduction of such an ordinance in the Commission, *it shall be published in the official newspaper as adopted by the Commission* in the city of La Porte one time, and *shall not thereafter be finally acted upon until at least thirty days have elapsed* after the first notification thereof. Any citizen of the city of La Porte, or of the territory to be annexed, shall have the right to contest said annexation by filing with the Commission a written petition setting out the reasons for said contest, and after such citizen or citizens shall have been given an opportunity to be heard, said ordinance *in original or amended form, as said Commission in its judgment may determine,* shall be *finally* passed, and the territory so annexed shall be a part of the city of La Porte and the inhabitants thereof shall be entitled to all rights and privileges of other citizens and shall be bound by the acts, ordinances, resolutions and regulations of said city." (Emphasis supplied)

■ The provision that the ordinance shall be published "as adopted by the commission" in itself shows that the publication is to follow first reading, for unless there has been at least one reading the ordinance could not be published as adopted by the Commission, for it would not have been adopted in any sense at all. The wording that the ordinance shall not be "finally acted upon" until at least thirty days after the notification by publication in itself shows that some action preceding the final action is contemplated. If there were to be only one action, one reading, there would be no need for use of the word "finally." Again, the provision that the ordinance "in original or amended form, as said commission in its judgment may determine, shall be finally passed" contemplates a first reading preceding the final reading by using the word "finally" and by speaking of such final passage of the ordinance in "original or amended form", since unless the ordinance had been passed on first reading, there would be nothing to amend.

The meaning of the charter provision as shown by its own words is reinforced by the actual practice and conduct of the Commission under it in all the years since it was adopted as shown by testimony in the records. 39 Tex.Jur.2d, Municipal Corporations, Sec. 46, declares, "Although not binding on the court, a construction placed on an ambiguous provision by City or State officers in carrying out the provisions of a

charter is entitled to persuasive force, and will ordinarily be upheld unless clearly erroneous." Citing cases.

We hold, therefore, under the La Porte ·charter, publication is a prerequisite to final passage, but not to first reading.

Ordinances 473, 493 and 550 were all prior to the first reading of Houston Ordinance 60–989 and all including parts of the area in issue here.

■ It is well settled that whatever municipality first takes steps toward annexation, has annexation jurisdiction. Thus we hold that the La Porte ordinances preceding the first reading of Houston Ordinance 60–989 give it precedence. A recent case in accord with the long line of Texas decisions upholding the prior rights of the city that has acted prior in time is Pennington v. Corpus Christi, Tex.Civ.App., 363 S.W.2d 502, reh. denied, January 9, 1963. Also see Mallow v. City of Denton, Tex.Civ.App., 356 S.W.2d 707, writ refused, n. r. e.; City of Houston v. State of Texas ex rel. City of West University Place et al, 142 Tex. 190, 176 S.W.2d 928.

■ As to La Porte Ordinances 387 and 392, with the exception of the airport area, we hold that they are not valid inasmuch as La Porte sought to disannex them through subsequent ordinances. While La Porte's authority to disannex the areas is extremely doubtful, we hold that such disannexation would have been accomplished through subsequent validating statutes passed by the Legislature. However, the validating statutes apply conversely to validate acts and omissions of the city respecting the annexation ordinances.

By counterpoint, Houston maintains that in Cause No. 571, 595 the District Court of Harris County in a case styled State of Texas ex rel. City of Houston et al v. City of Pasadena and City of La Porte held that Houston's Ordinance No. 60–989, passed and adopted on its first reading June 22, 1960, validly extended annexation jurisdiction over all the territory contained in Harris County not theretofore contained within the City of Houston or not theretofore validly contained within some other city, town or village. Houston further contends that in Cause No. 571,595, styled State of Texas, Plaintiff ex rel. City of Pasadena and City of La Porte v. City of Houston brought in the District Court of Harris County, the City of La Porte directly attacked Houston Ordinance No. 60–989 on the same grounds set out in its answer in Cause No. 571,595, above. The court dismissed this latter suit stating that the cause was moot because of the judgment entered in the abovementioned Cause No. 571,595. Houston maintains that by virtue of the terms of the judgment in Cause No. 571,595, it has been finally adjudicated that the City of Houston Ordinance No. 60–989 validly extended annexation jurisdiction over the territory purportedly annexed by La Porte because such territory was not "contained within" the City of La Porte. That by virtue of these judgments, La Porte is estopped from attacking the above described Houston Ordinance. We cannot agree.

■ Houston apparently takes the position that Houston Ordinance No. 60–989 has operative effect from its first reading, June 22, 1960, but that La Porte Ordinance 587 does not have operative effect from its first reading, June 6, 1960, but only from final passage. There is no reason for any such distinction. The Texas authorities agree that annexation priority between cities depends upon the first exercise of annexation jurisdiction by first reading.

The validity of Houston Ordinance 60–989 is not the question before us but rather the question of what territory it encompasses under its own terms. By that ordinance Houston purported to lay claim to all territory within Harris County not already within the annexation jurisdiction of some other municipality. That is all it could validly do. The La Porte ordinance was prior in time. While the Houston ordinance might be valid, it would by its own terms

only cover, and under the law including the abovementioned judgments could only cover, territory not already within the annexation jurisdiction of some other municipality.

We reverse and render the judgment of the Trial Court in that we hold the City of La Porte to be a valid Home Rule city with authority to pass the above described Ordinances 587, 473, 493 and 550, that said ordinances are valid and are prior in time and take precedence over Houston Ordinance 60–989

Reversed and rendered.

HUGHES, Justice (dissenting).

The disturbing question upon the determination of which my decision turns is whether or not the resolution adopted by the Board of Commissioners of the City of La Porte on December 21, 1948, finding that such city at such time had a population of more than 5000 inhabitants is conclusive here in the absence of a showing of bad faith on the part of the Board in adopting such resolution.

No effort was made by the City of Houston to show bad faith on the part of the Board. This burden, if cast on the City of Houston, is, in most instances, a nigh impossible burden to discharge.

I have concluded that the City of Houston does not have this burden and that the number of inhabitants of the City of La Porte on March 22, 1949, the date of the charter election, should be determined, as the Supreme Court said in City of Houston v. City of Magnolia Park, 115 Tex. 101, 276 S.W. 685, "by showing, *as it would any other fact,* that it had, at that very time, more than 5,000 inhabitants." (Italics added)

In Magnolia Park the City of Houston attempted to annex the City of Magnolia Park over its objection that it had the right of self determination under the Home Rule Amendment to the State Constitution, (Art. 11, Sec. 5) by reason of its having more than 5000 inhabitants. The Court held that Magnolia Park "had the right to defeat the plan (forced annexation) by showing, as it would any other fact, that it had, at that very time, more than 5,000 inhabitants."

In that case the Supreme Court had before it and discussed the case of Williams v. Castleman, 112 Tex. 193, 247 S.W. 263, upon which appellant strongly relies here.[1] If that decision supports appellants here, then the Court in City of Magnolia Park could have said that such City could defeat the attempt of the City of Houston to annex it by passing a resolution declaring its population to be more than 5000 inhabitants rather than holding that Magnolia Park could defeat such attempt by proving its population to be in excess of that number as it would prove "any other fact."

The Castleman case, supra, is not in point here. There the Court construed Art. 5, Sec. 18 of our Constitution as implying a grant of power to Commissioners Courts to determine the population within defined areas in order to perform its express constitutional duty of fixing the number and boundaries of justice precincts within the County.

The Constitutional provision involved here, Art. 11, Sec. 5, does not mention the governing body of affected cities and there is, therefore, no premise for an implied power to be granted it, there being no grant of an express power to it.

The case of Brooke v. Dulaney, 100 Tex. 86, 93 S.W. 997 involved Article 5, Section 20 of the Constitution calling for the

---

1. Town of Freeport v. Sellers, 144 Tex. 398, 190 S.W.2d 813 is also cited by appellant on this point. There it is stated, "No contest is presented as to the Town of Freeport not having more than 5000 inhabitants at the time it sought to assert a right given under Section 5 of Article XI of the Constitution of Texas." Such case, perforce, cannot be less in point here.

election of a single clerk to act as both District and County Clerk, in "counties having a population of less than 8,000 persons" with no method of determining such population provided. In 1879, the Legislature passed a statute which directed that the question of whether a county had 8,000 population should be determined by an estimate made on the basis of 5 inhabitants for every vote cast for governor in such county at the last preceding general election. Under the terms of this act, Panola County could only show an estimate of less than 8,000 persons whereas the preceding federal census showed that the county had a population in excess of 20,000 persons. The Texas Supreme Court held the act of the Legislature was void.

The Court discussed a New Jersey case, In Re Sewer Assessment of Passaic, 54 N.J.Law 156, 23 A. 517, which held that when a statute referred to population that the word "population" bore the meaning of enumeration of inhabitants and refers to such enumeration as the law provides to be made, the New Jersey Court saying, "Any attempted enumeration not accompanied with power to inquire and to compel answers would be a mere farce."

The Court in Dulaney held that the federal census controlled and that, if framers of the Constitution had intended that the methods of determining the enumeration in the case of district and county clerks should be confided to the Legislature, the framers would have expressly declared that intention. Chief Justice Gaines then went on to say that, should it be conceded that it was intended to leave with the Legislature the power of prescribing a method of ascertaining the number of population, the act in question still could not be permitted to stand, saying:

"Sections 9 and 20 of article 5 of the Constitution in effect prescribe abso-

lutely that every county having 8,000 population or more shall have two clerks; and even if the Legislature have the authority to regulate the mode of ascertaining the number of the inhabitants, it is not an arbitrary power; but it is one that must be exercised in such a manner as not to deprive the counties of a right guaranteed by the Constitution. Ordinarily the reasonableness of a law is a matter for the Legislature, and their determination is binding upon the courts. But when the Constitution declares that every county having a population of 8,000 shall have two clerks, the Legislature cannot either directly or indirectly take away the right so conferred. They cannot, under the guise of fixing a mode of ascertaining the number of the population, impair the mandate of the fundamental law. It follows, therefore, that if the Legislature has the right to fix the method that method must be such as is calculated to ascertain with some reasonable degree of approximation the true population of the county, otherwise the Constitution is infringed and the counties deprived of a right granted by it."

There is no contention here that the United States census should control. The import of the Dulaney case is, however, that the governing Board of the City of La Porte cannot without constitutional or legislative authority finally determine by an ex parte resolution the number of its inhabitants on a particular date and that it cannot with legislative authority make such determination in an arbitrary manner and thus impair the mandate of the Constitution to the inhabitants of a city. If a governing board can arbitrarily determine that a city has *more* than 5000 inhabitants, it can arbitrarily find that it has *less* than such number.[2] The decision is also of impor-

2. Art. 11, Sec. 4 of the Texas Constitution provides, in part, that "Cities and towns having a population of five thousand or less may be chartered *alone* by general

law." Italics added. Should the governing body of a city or 10% of its qualified voters without Constitutional or statutory authorization have the final authority to

tance in gauging what the Legislature has done respecting the method of determining the population of a city seeking to adopt a charter under Art. 11, Sec. 5. Has it prescribed a method "calculated to ascertain with some reasonable degree of approximation the true population of the" city? If not the "Constitution is infringed."

All that the Legislature has done in the way of enabling legislation is reflected by Arts. 1165–1170, V.A.C.S.

Art. 1165, provides in part:

"The governing body of such city may, by two-thirds votes of its members, or upon petition of ten per cent of the qualified voters of said city, shall provide by ordinance for the submission of the question, 'shall a commission be chosen to frame a new charter.'"

Article 1166 prescribes the requisites of the ordinance submitting such question, the form of ballot, etc. Art. 1167 provides for the submission of the charter framed by the Charter Commission to the voters.[3] Art. 1168 provides that under certain circumstances the provisions as to the selection of a Charter Commission shall not apply to the first charter election held under the terms of "this law." Art. 1170 provides the amendment of any existing charter.

None of these statutes provides any method for determining the population of the City. They could not, therefore, be said to prescribe a method "calculated to ascertain with some reasonable degree of approximation the true population of" La Porte.

If it is sound to argue under Art. 1165, supra, that since the governing body has authority to call an election to determine if a Charter Commission shall be chosen, it

has the implied authority to find population of the city, then it is equally arguable that 10% of the qualified voters have the same authority.

In Ewing v. State ex rel. Pollard, 81 Tex. 172, 16 S.W. 872, the Court, Judge Gaines writing, held that whether the action of the inhabitants of Oak Cliff in attempting to incorporate their city is such as the Legislature empowered them to do is a "judicial" question. In that case he discussed and distinguished State ex rel. Goodnight v. Goodwin, 69 Tex. 55, 5 S.W. 678, cited by appellant herein, and we quote his words:

"But it is also urged that the county judge of Dallas county had the power to determine what the limits of the proposed corporation should be, and that having ordered the election to determine whether or not the city should be incorporated with the limits as proposed by the petitioners, his action was conclusive of the question. In support of this proposition, we are cited to the case of the State [ex rel. Goodnight] v. Goodwin, 69 Tex. 55, 5 S.W.Rep. 678. In that case the attempt was to annul the alleged corporation upon the ground that, at the time of the election to determine the question whether the city should be incorporated or not, it did not contain the number of inhabitants required by the statute in order to empower it to become a body corporate as a city. It was held that the action of the county judge in ordering the election was conclusive upon that question. But the statute provides that the county judge shall order the election 'if satisfactory proof is made that the city contains the requisite number of inhabitants.' Rev.St. art. 508; Sayles' Civil St. art. 340a. Since it is made the

---

negative this exclusive constitutional authority of the Legislature by erroneously finding a city to have more than 5000 population?

3. It is to be noted from this statute that the time of this election is to be fixed by

the "charter commission," and that all the "governing body" has to do with the election is to cause a copy of the proposed charter to be mailed to the qualified voters.

duty of that officer to inquire into and to be satisfied by proof of the fact that the proposed corporation contains the requisite number of inhabitants before ordering the election, it was very properly held that his decision of the question was intended to be final. But there is no such provision as to fixing the boundaries of the town. He is not invested with the power to withhold the order of election because the proposed limits may embrace territory that ought not to be included. It is proper that the boundaries of a proposed municipal corporation should be distinctly marked by the petitioners in the application to the county judge. This would seem essential, in order that it may be definitely known who are entitled to vote at the election to determine the question of incorporation. But we think that the inhabitants of the city or the promoters of the corporation must fix the limits for themselves."

I consider this decision by Judge Gaines to be directly applicable, on principle, to the question under discussion.

It is my opinion that the population of La Porte on March 22, 1949, is a subject of judicial inquiry and should be determined as stated by the Supreme Court in the only opinion by it addressed specifically to the question before us, by proving such population as any other fact could be proved. This procedure accords with the elemental principles of due process. I would tenaciously adhere to them.

It is only necessary that I briefly notice the contention that the Legislature has validated the Home Rule status of La Porte and the annexation ordinance in question. The statutes cited to this end are 1174a–1, 1174a–2, 1174a–4 and 1174e, V.A.C.S. I have read these statutes. They do not purport to validate the Home Rule status of a city which did not have the required population of 5000 inhabitants when the election for such purpose was held. Any such at-tempted validation would, of course, be unconstitutional and void.

Art. 1174e does ratify and confirm certain annexation ordinances adopted by "home rule" cities. Unless La Porte is a home rule city, the statute does not apply. This is the question at issue.

I would hold the jury finding that La Porte had more than 5000 inhabitants on March 22, 1949, to be so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. I do not discuss this holding because the majority has not decided it and need not under its holding that the December 21, 1948, resolution is conclusive. I would reverse and remand this case. I therefore, respectfully dissent.